In the Matter of ROCCO POTENZA, Petitioner, v JAMES B. KANE et al., Respondents.

Fourth Department, March 27, 1981

APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Paul Cambria* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Patrick McCormack* of counsel), for James B. Kane and others, respondents.

*Edward C. Cosgrove, District Attorney (John DeFranks* of counsel), for respondent.

### OPINION OF THE COURT

SIMONS, J. P.

Petitioner is an attorney charged with bribing an Assistant District Attorney to obtain favorable treatment for his clients. His trial ended when his motion for a mistrial was granted. Claiming that the double jeopardy clause bars retrial because his motion was provoked by prosecutorial misconduct, he brings this CPLR article 78 proceeding seeking an order of prohibition (see *Matter of Di Lorenzo*

*v Murtagh*, 36 NY2d 306, 309; *Matter of Kraemer v County Ct. of Suffolk County*, 6 NY2d 363; *Matter of De Canzio v Kennedy*, 67 AD2d 111, 113). We find no misconduct by the prosecution warranting the relief requested and therefore dismiss the petition.

The charges against petitioner arose out of an incident in which his clients, posing as reputable repairmen, allegedly defrauded 81-year-old Mabel Hartung of $9,000 by making unnecessary repairs to her home. The matter was reported eventually to Richard Mancuso, Assistant District Attorney of Erie County in charge of the Consumer Fraud Bureau. It was the theory of the prosecution, and Mancuso so testified, that petitioner paid Mancuso $1,000 to avoid prosecution of his clients and to permit the matter to be settled by civil compromise. To prove its case, the prosecution relied primarily on the testimony of Richard Mancuso and evidence contained in recordings of three telephone conversations between Mancuso and petitioner.

During the three weeks of trial, petitioner's counsel made 12 motions for mistrial and he now asserts that the prosecutorial misconduct which provoked these motions, when considered cumulatively, was so egregious and prejudicial that his retrial should be prohibited. The alleged misconduct falls generally into three separate areas involving such matters as the prosecutor's opening statement and his prejudicial gestures before the jury, his questions while examining witnesses and, finally, petitioner's claim that the prosecutor intentionally failed to deliver to him the original tape of one of his four intercepted telephone conversations with Mancuso. This latter incident precipitated the court's ruling terminating the trial, but the court did not rely upon it alone in granting petitioner's motion.

There is a strong policy of American law favoring finality in criminal proceedings which is expressed in the constitutional and statutory prohibitions against double jeopardy (US Const, 5th Amdt; and see *Benton v Maryland*, 395 US 784 [applying the 5th Amdt to the States]; NY Const, art I, § 6; CPL 40.20, subd 1). The amendments are designed to protect the individual's basic human right not to be harassed or perhaps impoverished by successive prosecu-

tions for the same offense either by means of multiple trials, multiple punishments or deliberate efforts by the prosecution to find a court or jury that will convict the defendant. The underlying idea, in the words of Justice BLACK, is that the State with all its power may not be allowed to make repeated attempts to convict an individual, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty" *(Green v United States*, 355 US 184, 187-188). When applied to mistrials, the double jeopardy clause also protects a defendant's "valued right to have his trial completed by a particular tribunal", a right however, which is not absolute but which may at times be subordinated to the public interest in fair trials ending just judgments *(Wade v Hunter*, 336 US 684, 689; and see *United States v Dinitz*, 424 US 600; *Illinois v Somerville*, 410 US 458). Thus, it has been held that a trial may be aborted even without the consent or acquiescence of the defendant, and he may be retried, if there was a "manifest necessity for the act, or the ends of public justice would otherwise be defeated" *(United States v Perez*, 9 Wheat [22 US] 579, 580; see *Arizona v Washington*, 434 US 497; *Illinois v Somerville, supra,* p 461; *United States v Jorn*, 400 US 470; *Matter of Cardin v Sedita*, 53 AD2d 253), or if "it clearly appears that a mistrial has been granted in the sole interest of the defendant" *(Gori v United States*, 367 US 364, 369). Needless to say, when a defendant requests that the trial be terminated, his request ordinarily removes the constitutional barrier and he may not claim that the double jeopardy clause prevents a second prosecution even though the mistrial is based upon prosecutorial or judicial error *(United States v Dinitz, supra; United States v Jorn, supra; Drayton v Hayes*, 589 F2d 117). Notwithstanding that general rule, an exception has been recognized in extreme cases of prosecutorial overreaching, for the prosecutor may not pre-empt defendant's right to complete his trial by misconduct which leaves defendant with no choice but to move for a mistrial. "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be fol-

lowed" in the event of prosecutorial or judicial error *(United States v Dinitz, supra,* p 609). As long as he does, his voluntary motion permits retrial. If defendant's motion is induced or provoked by prosecutorial harassment, retrial may be prohibited.

Although the United States Supreme Court and the courts of New York recognize this exception, neither has yet barred reprosecution following a successful defense motion for mistrial because of prosecutorial misconduct.[1] Moreover, in discussing the exception neither has specified, except in the most general terms, what misbehavior will be viewed as sufficiently grave to warrant prohibition. Culling from the decisions, however, it seems that the exception will not apply unless the prosecutor's misconduct was motivated by bad faith *(United States v Dinitz,* 424 US 600, 611, *supra;* see *Lee v United States,* 432 US 23, 33; *Mitchell v Smith,* 633 F2d 1009, 1013), a characterization which suggests conduct willful or grossly negligent and "designed to avoid an acquittal" *(United States v Jorn,* 400 US 470, 485, n 12, *supra),* or to provoke a motion for mistrial *(United States v Cox,* 633 F2d 871; *Mitchell v Smith, supra,* 1013; see, also, *Downum v United States,* 372 US 734, 736; *Drayton v Hayes, supra,* p 121; *United States v Martin,* 561 F2d 135, 138-140; *United States v Kessler,* 530 F2d 1246, 1256-1258; *United States v Beasley,* 479 F2d 1124, 1126, cert den 414 US 924). It is not enough that the prosecutor's conduct is motivated by a desire to gain an edge over defendant. Such misconduct may require a new trial, but it will not normally prevent reprosecution. Reprosecution will be prohibited only if the misconduct was aimed at vitiating the protection of the double jeopardy clause to gain a more favorable opportunity to convict defendant. Concededly, motivation may be difficult to determine, but the misconduct must be so reprehensible as to justify the inference that it was done in bad faith for the purpose of provoking defendant's motion. Prejudice to defendant is also a part of the

---

1. For cases in which retrial has been prohibited see, e.g., *United States v Martin* (561 F2d 135 [improper use of Grand Jury testimony]); *United States v Kessler* (530 F2d 1246 [use of false evidence]); in *People v Conlon* (66 A.D2d 823) a majority of the court ruled in favor of retrial, but one Judge, dissenting, would have prohibited retrial (see p 824).

equation, for logically, if defendant has not been prejudiced, it would seem that his motion was not coerced but was voluntary and made for strategic purposes *(Mitchell v Smith, supra,* p 1013; *Drayton v Hayes, supra,* p 122). Former Chief Judge BREITEL capsulized these considerations when he observed in dictum that reprosecution is not barred so long as the motion is made by defendant and the error prompting it is not motivated by bad faith or a desire to provoke the motion *(People v Key,* 45 NY2d 111, 119; see, also, Ann., 98 ALR3d 997; Comment, The Double Jeopardy Clause and Mistrials Granted on Defendant's Motion, 18 Duquesne L Rev 103; Comment, Double Jeopardy, An Illusory Remedy to Governmental Overreaching, 29 Buffalo L Rev —).

A certain degree of finesse is required in judging the issue, because the public interest is not served if every prosecutorial miscue, no matter how slight, results in double jeopardy consequences. On the other hand, neither defendant's nor society's interests are advanced if the court, fearing double jeopardy, refuses to grant a defendant's motion for mistrial except in the most extreme case of misconduct. That approach forces defendant to slog his way through a hopelessly flawed trial to its ultimate conclusion, inevitable appeal and later retrial, and it runs counter to the purposes underlying the double jeopardy clause because it subjects defendant to the additional delay, expense and anxiety resulting from the futile effort of consummating the trial.

With these considerations in mind and recognizing that each case must be decided on its particular circumstances (see *United States v Jorn,* 400 US 470, 486, *supra; Wade v Hunter,* 336 US 684, 690, *supra; United States v Perez,* 9 Wheat [22 US] 579, 580, *supra; Drayton v Hayes,* 589 F2d 117, 122, *supra),* we examine the case at hand, bearing in mind that we are addressing ourselves to the seriouness of the prosecutor's misconduct, not the propriety of the court's rulings as would be the case in a *sua sponte* declaration of mistrial.

Considering first the prosecutor's comments and gestures, it is apparent that several parts of his opening statement

might better have been saved for closing argument. Many of defense counsel's objections were sustained, however, and the court minimized the possible prejudice by admonishing the prosecutor before the jury. It is not possible to review petitioner's complaints about the prosecutor's gestures or "grandstanding" from the record. Suffice it to say, the trial court found that the motions either lacked merit or that the prosecutor's conduct had not resulted in any prejudice to defendant. Petitioner cites other matters, subjects of defense motions, but they occurred outside the presence of the jury and could not have prejudiced defendant's case.

In the motions precipitated by the prosecutor's examination of Richard Mancuso, counsel claimed that the prosecutor was improperly leading or impeaching his own witness. By way of background, at the time Richard Mancuso testified, he was sentenced to Attica Prison for similar crimes involving abuse of his office as an Assistant District Attorney. He testified at petitioner's trial under a grant of immunity and with his personal lawyer sitting next to him during his examination. There was no question of this former prosecutor being "tricked" by leading questions and there was very little question of his antipathy towards the prosecution's case when some of the leading questions were asked, even if that hostility had not been demonstrated formally on the record. Nor did he deny his friendship with petitioner. Notwithstanding this background, however, the prosecutor was kept on a very short leash during his examination, and that being so, we can find no egregious misconduct on his part in opting for the tactics which best helped him elicit from the witness the evidence necessary to his case. As far as the impeaching questions are concerned, the questions contained nothing new to the jury. In the opening statement it had been fully informed of Mancuso's background without objection.

Looking at it from another perspective, we would have been reluctant to reverse the trial court if it had permitted the prosecutor to lead or impeach Mancuso under the circumstances of this case. That is not to say that the court erred in sustaining objections to the prosecutor's questions, but only that this was an area of broad discretion in which the court might have properly ruled either way. That being

so, it is difficult to find the prosecutor guilty of misconduct in his examination.

Petitioner contends that the prosecutor acted in bad faith because he was repeatedly warned by the court to stop leading. We do not condone an attorney's disregard of the court's reasonable directions, but the prosecutor here might well have believed that many of his questions were not objectionable and he demonstrated his good faith in framing them by pertinent legal argument and a written brief properly designed to aid the court on the point.

The problem concerning the tape recording also requires some discussion. Petitioner's case was one of several involving improper contacts between private attorneys and Mancuso. Most of the cases involved wiretaps, and the Trial Judge stated that there had been over 6,000 intercepts during the investigation. Before petitioner's trial, the People had been ordered to make all logs and duplicate tapes involving the Hartung matter available to his counsel. The prosecutor had done so and had identified as relevant the three tapes which he subsequently introduced into evidence. During petitioner's cross-examination of Mancuso on October 9, however, it developed that there was a fourth tape in which Mrs. Hartung was mentioned. Counsel claimed surprise by this discovery, the trial was suspended and a duplicate tape delivered to him to enable him to prepare his cross-examination. On October 14 petitioner moved for a mistrial and on October 17, a Friday afternoon, the court considered the motion. It reviewed the facts concerning the nondisclosure of the fourth tape and found that the error may have been occasioned by a notation on one of the three logs that the newly discovered conversation was between Mancuso and a lawyer named Arcadi. The log originally contained petitioner's name, but the name was stricken and Arcadi's name was written over it. Apparently the officers working on the tapes had been unsure whether the conversation was between Mancuso and petitioner or Mancuso and Arcadi. They had finally decided that it was with Arcadi and none of their logs identified the tape as a conversation involving petitioner.

Ruling that the prosecutor's failure to produce the fourth tape was not intentional, the court denied petitioner's mo-

tion for a mistrial. His counsel then refused to use the duplicate and demanded that the original tape be produced. The prosecutor attempted to do so by delivering all the original sealed tapes to the court later that afternoon, but when the box was opened, it was discovered that the mislabeled original was not with the others but was with the clerk of this court as an exhibit on appeal in *People v Arcadi* (79 AD2d 845). The prosecutor offered to retrieve the tape from Rochester, but the court told him to wait until the following Monday. On Monday petitioner again moved for a mistrial. Although the court repeated its finding that the prosecutor's failure to deliver the original tape was not intentional, but rather was improper planning "possibly verging on negligence", it granted the motion because "the elapsed period of time, added on to all of the other matters" made it "impossible to continue". The prosecutor offered to go to Rochester that day and obtain the original, suggesting that a mistrial would be appropriate only if it developed that the original tape and the duplicate differed, but the court refused to reconsider its ruling.

It is not necessary to analyze the circumstances further. There is nothing in the record suggesting that the prosecutor needed or wanted a second trial or that his conduct was designed to abort the trial to secure another more favorable chance to convict. His evidence was apparently developing predictably to his satisfaction and when the mistrial motions were argued, he strongly opposed them.

Petitioner contends that he was prejudiced by the prosecutor's actions, but we are hardput to isolate any prejudice. This was a contentious trial, punctuated by frequent interruptions and delays. The last recess of four days was granted upon petitioner's request after discovery of the fourth conversation between Mancuso and petitioner.[2] Counsel originally agreed to use the duplicate tape to prepare his cross-examination of Mancuso on this 13-line conversation[3] and it was only after his motion for a mistrial was

---

2. Actually the recess lasted from October 9 to October 20. During part of this period, petitioner was sick and unable to proceed.

3. The transcript is included in respondent's answer. It is as follows:.
"MI (MANCUSO) Hello.

denied on October 17 that he refused to use the duplicate and insisted that the original be produced. When the prosecutor was unable to obtain it without going to Rochester, petitioner moved again for a mistrial and the court granted the motion.

If petitioner is to succeed on this application, he must satisfy a heavy burden of proof. It is not enough that he claims that his trial was defective because of legal error or prosecutorial zeal or mistake. Few trials are flawless and a defendant may not prevail in prohibition simply because his was not. He must show that the prosecutorial misconduct was so egregious that the judicial process itself has broken down. If he does, then the court may fairly say that society's interest in a new trial to establish defendant's guilt or innocence has been superseded by an overriding necessity to protect the integrity of the judicial process. That was not shown here, however, and the petition should, therefore, be dismissed.

HANCOCK, JR., J. P., DOERR, DENMAN and MOULE, JJ., concur.

Petition unanimously dismissed, without costs.

---

"MO (POTENZA) Hello.
"MI You called me.
"MO Oh yea.
"MI Tomorrow, I'll have those tickets.
"MO Yea, I have * * * before me a file.
"MI Yea tomorrow, tomorrow morning.
"MO Mabel Hartung.
"MI I'll stop in the morning.
"MO I'll show you our file.
"MI * * * for sure * * * everything is cool.
"MO Yea.
"MI Goodbye."