■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEON POLK, Appellant. — Judgment unanimously affirmed. Memorandum: Defendants were indicted for murder in the second degree, conspiracy in the second degree and criminal facilitation in the second degree in connection with the shooting death of one Randolph "Bay" Grace at the Grimoire Tavern in the Town of Onondaga on April 16, 1978. After a jury trial, defendants were acquitted of

the murder charge and convicted of criminal facilitation in the second degree. The conspiracy charge was dismissed by the court. On appeal they raise several grounds for reversal. "Bay" Grace was shot in the chest with an automatic revolver by Adrian "Boo" Greene on the patio of the Grimoire not far from the front door at about 4:00 A.M. on April 16, 1978. Greene, together with defendant Polk, who was brandishing a shotgun, emerged from the bushes near the patio where they had been lying in wait for Grace. Greene and defendants Polk and Harrison were members of a gang of which Harrison was the leader. Earlier on the same night, the victim, Grace, a member of a rival gang, had severely beaten Greene in the parking lot at the Grimoire. There is evidence that Greene, during or immediately after the fight with Grace, said: "Get Bob! Get Bob!" (defendant Arthur "Bobby" Harrison); that Harrison shortly thereafter received a phone call at another tavern following which he, in the company of other members of his gang, left for the Grimoire; that upon arrival at the Grimoire, he was met in the parking lot by a gang member who advised him of the fight and told him in response to his question as to the whereabouts of Greene that "They [Greene and Polk] was in the back hiding with some guns." Harrison walked to the front of the Grimoire and met the victim Grace as he was emerging from the front door. In reply to Grace's inquiry as to what Harrison had to do with the incident, Harrison feigned ignorance of the victim's fight with Greene. A discussion ensued during which Harrison put his arm around the victim's waist and guided him to a position near the side wall of the patio to the left of the doorway saying: "Come here man. We can rap over here." At this point a member of Harrison's gang who had been with Polk and Greene gestured to Harrison. Harrison took a step back from the victim just before Greene and Polk emerged to the left of the victim from around the wall of the patio. Greene shot Grace in the left side and Polk ordered Grace's friends to "stay back" and "don't move." There is evidence that after Grace was shot, Harrison said to Greene: "That's it man. That's enough." and ordered Polk and another gang member to "Get Larry" (Larry Williams, another member of the rival gang). After the incident, Harrison, General Davis (a member of Harrison's gang), and Polk, who had the gun which Greene had used, left the scene in Harrison's car. There is proof that Harrison made statements to witnesses and gave directions to members of his gang as part of an attempt to suppress evidence and to concoct a fictitious account of the shooting incident. We reject defendant Harrison's contention that the evidence was insufficient to support a finding of guilty of the crime of criminal facilitation in the second degree. The jury could have concluded that defendant Harrison, in talking with Grace and feigning ignorance of the beating he had given Greene and maneuvering him to the position to the left of the door where he was shot, did so believing it was probable that he was rendering aid to persons who intended to commit a class A felony (i.e., Greene and Polk who were lying in wait for the victim with loaded weapons) (Penal Law, § 115.05). The proof was also sufficient for the jury to conclude that Harrison's conduct provided Greene and Polk with the opportunity for commission of the crime, and, in fact, aided Greene in its commission (Penal Law, § 115.05). We find no basis for reversal in defendants' contention that the indictment should have been dismissed because the Grand Jury was illegally constituted. The Grand Jury was impaneled to "continue until the completion of its business" by order of the Chief Administrative Judge of New York exercising the authority formerly vested in the Appellate Division under CPL 190.10 (NY Const, art VI, § 28; 22 NYCRR 445.3; see *Matter of Seidenberg v County Ct. of County of Rockland,* 34 NY2d 499, 507, 509-510, affg *Matter of Pesner v County Ct. of County of Rockland,* 42 AD2d 275; and see *Matter of Pesner v County Ct. of County of Rockland, supra,* p 279). The record reveals no

reason for rejecting the findings of the hearing court, based on its review of the Grand Jury testimony, that no abuse had resulted from the Grand Jury's having been in existence for seven months prior to the indictment, that the Grand Jury had been in regular session without recess from the time it was charged to the date of the indictment, and that the confidential investigation for which the Grand Jury had been impaneled was related to the activities of the defendants and to the subject matter of the indictment. We reject defendants' contention that the trial court should have granted their motion to dismiss the indictment on the grounds of double jeopardy. Defendants' retrial was not occasioned by a mistrial motion but followed a full trial before the court, without a jury, which resulted in defendants' convictions for murder in the second degree and conspiracy in the second degree. The trial court vacated the convictions and ordered a new trial after a hearing on motion of defendants. Although there was some evidence of prosecutorial misconduct, it appears that the reason for the new trial was newly discovered evidence. The fact that the prosecution successfully convicted defendants of murder in the first trial rules out any possibility that the Assistant District Attorney was, through his conduct, endeavoring to force a new trial for the purpose of gaining a better opportunity for conviction. The cases in which the prosecution deliberately provoked a mistrial motion by defendants to gain a more favorable opportunity for conviction are clearly not in point (see, generally, *Matter of Potenza v Kane,* 79 AD2d 467, 470). The trial court properly admitted proof pertaining to the existence of two rival gangs, to the membership of various witnesses and participants in these gangs, and to defendant Harrison's position as leader of one gang. Such evidence bore on the motive for the killing and was part of the chain of circumstantial evidence linking defendant Harrison to the crime (see *People v Le Grand,* 76 AD2d 706). We find no ground for reversal in the court's exclusion of the proffered testimony of Celeste Rolle pertaining to the hostility of the People's witnesses toward defendants. In view of the proof concerning the gangs and the relationship of the various participants thereto and the other extensive evidence of the enmity of several of the People's witnesses toward the defendants, the offered testimony would have been cumulative (see *People v. Roach,* 215 NY 592, 605-606). We cannot say its exclusion was an abuse of discretion. There is no basis for reversal in any of the other points raised by defendants. (Appeal from judgment of Onondaga County Court, Sullivan, J. — criminal facilitation, second degree.) Present — Dillon, P. J., Hancock, Jr., Doerr, Denman and Moule, JJ.