■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HERBERT LEWIS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Sharpe, J.), rendered November 17, 1983, convicting him of robbery in the first degree, robbery in the second degree, and criminal possession of stolen property in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Giaccio, J.), of those branches of the defendant's omnibus motion which were to suppress identification testimony and physical evidence.

Presiding Justice Mollen has been substituted for the late Justice Gibbons *(see,* 22 NYCRR 670.2 [c]).

Ordered that the judgment is affirmed.

A mistrial was declared during the defendant's first trial because, in response to a question from the prosecutor as to the first thing he did in his investigation, a police officer testified that he looked in his files to see if the names of the defendant and his codefendant Oscar Williams were there and that their names were in fact listed. During the second trial, which resulted in the judgment now being appealed from, the defendant sought dismissal of the indictment on the ground of double jeopardy. We find that a retrial was not barred on this ground (see, Matter of Potenza v Kane, 79 AD2d 467, 470, 475, lv denied 53 NY2d 606).

Contrary to the defendant's contentions, we also find that there was probable cause for his arrest and that those branches of his omnibus motion which were to suppress an out-of-court identification, in-court identification testimony, and physical evidence were correctly denied.

The suppression hearing testimony revealed that on April 14, 1983, at approximately 11:30 P.M., the arresting officer, Richard Vergara, and his partner, were on patrol in an unmarked police car when they received a radio call that two black males driving a late model four-door black Mercury Zephyr automobile bearing livery license plates were wanted in connection with a nearby robbery in which shots had been fired. Continuing on patrol, the officers shortly thereafter observed a car matching the description of the one given in the radio call. The vehicle was stopped but its engine was on. When the officers stopped and backed up, the driver of the Mercury, the codefendant Oscar Williams, looked at the officers, exited the car, and ran away.

There was further testimony that Officer Vergara went to the Mercury, turned off the ignition, and removed the keys. He and his partner then started in pursuit of Williams. As they walked in the direction in which Williams had fled, the officer observed the defendant Herbert Lewis exit a nearby residence, walk up to the car, and attempt to open the door. At this point, Officer Vergara ordered the defendant to "freeze". Because of the radio report that shots had been fired during the robbery, the officers frisked and searched the defendant for a gun. Nine .22 caliber bullets were found in his pants pocket, at which point the defendant was placed under arrest. The complainant was shortly thereafter brought to the scene, at which time he identified the defendant as one of the robbers. After being taken to the precinct, the defendant was

searched; the complainant's checkbook and wallet were found on him.

The defendant sought suppression of the identification and physical evidence. We find that there is no basis to do so. When the officers saw the defendant attempt to open the door of the car, presumably with the intention of entering it and driving away, they had reasonable suspicion that the defendant had also been involved in the robbery, especially since the radio transmission specified that *two* black males had committed the robbery. Where officers have reasonable suspicion to stop an individual, as well as reasonable grounds to believe that he may be armed with a gun, they may then pat down or frisk the individual for their own protection *(see, People v Davis,* 64 NY2d 1143; *People v Pitt,* 110 AD2d 723, *cert denied* — US —, 106 S Ct 254). Officer Vergara knew, prior to stopping the defendant, that shots had been fired during the robbery but did not know or recall that a rifle, rather than a handgun, had been used. Therefore, he had a reasonable basis to believe that the defendant might be armed with a concealed handgun, and was entitled to frisk him. The ammunition was thus lawfully recovered by the officer and properly admitted into evidence at trial.

Furthermore, the sum total of the officers' knowledge was at that point sufficient to give them probable cause to arrest the defendant *(see, People v McRay,* 51 NY2d 594, 602; *People v Laskaris,* 82 AD2d 34, 38). Since the arrest was lawful, the victim's ensuing on-the-scene identification of the defendant and the additional items of the victim's property subsequently recovered during the search of the defendant were lawfully obtained *(see, People v Samuels,* 109 AD2d 900).

We also agree with the hearing court's determination that the showup identification of the defendant was not unnecessarily suggestive. The complainant ran to a police station within an hour after the crime occurred and reported the incident. While at the precinct, he was told that two men had been apprehended but that the police were not sure whether or not they were the robbers; they wanted the complainant to view the men. He was then transported in a police car to a location where he saw the defendant, handcuffed, standing among many uniformed police officers. The complainant immediately told the officers that defendant was one of the robbers. He stated that he recognized the defendant the minute he saw him, and prior to observing that the defendant was handcuffed. The complainant had told the police that the robbers were black; he did not recall whether any of the

officers on the scene were black. Approximately two or three minutes after identifying the defendant, he saw and identified Williams, who had been arrested when he returned to the area. Approximately two hours transpired between the robbery and the identifications. According to the complainant, he had formed no opinion as to whether the men he was being taken to view were the robbers until he actually saw and recognized them.

The underlying rationale favoring a showup identification is that "based on fresh recollections of recent events, they insure reliable identifications of perpetrators and the prompt release of innocent suspects" *(People v Soto,* 87 AD2d 618, 619; *see also, People v Smith,* 63 AD2d 754). Here, the complainant had a good opportunity to observe the defendant during the robbery, in view of the fact that the garage in which the robbery occurred was well lit and he continued to look at the defendant, who was unmasked, for much of the 15 minutes during which the robbery took place. Although the showup was conducted under less than ideal conditions, we do not find it to have been unnecessarily suggestive *(see, People v Love,* 57 NY2d 1023; *People v Logan,* 25 NY2d 184, 192, *cert denied* 396 US 1020; *People v Brnja,* 70 AD2d 17, *affd* 50 NY2d 366).

In any event, there was an independent source for the complainant's in-court identification testimony. The basis of the in-court identification was the complainant's observation of the defendant during the incident, and not the allegedly tainted procedure *(see, People v Lloyd,* 108 AD2d 873, *affd* 66 NY2d 964).

We have reviewed the defendant's other contentions and find them to be either unpreserved or to be without merit. Mollen, P. J., Thompson, Eiber and Spatt, JJ., concur.