■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFRED WASHINGTON, Appellant.—Appeal by the defendant from a judgment of the County Court, Westchester County (Lomanto, J.), rendered January 10, 1985, convicting him of burglary in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification evidence. By order dated May 11, 1987, this court reversed the judgment of conviction and ordered a new trial *(People v Washington,* 130 AD2d 605). By order dated April 21, 1988, the Court of Appeals reversed the order of this court, and remitted the case to this court for further proceedings *(People v Washington,* 71 NY2d 916).

Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.

The Court of Appeals held, in *People v Washington (supra)* that it does not constitute error as a matter of law for the trial court, in a criminal prosecution, to prevent the defendant from exercising his due process right to testify in his own defense (US Const 14th Amend; NY Const, art I, § 6) where the defendant first requests to testify after the completion of summations, but before the delivery of the charge. We are of the opinion, however, that under the particular circumstances of this case, the trial court's refusal to permit the defendant to testify constituted an improvident, if not abusive, exercise of discretion. We therefore adhere to our earlier disposition of this appeal which was to reverse the judgment of conviction, and to order a new trial "as a matter of discretion in the interest of justice". (CPL 470.15 [3] [c]; *cf., People v Washington,* 130 AD2d 605, *supra.)* Bracken, J. P., Rubin and Harwood, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment of conviction with the following memorandum: Upon remittal of this matter from the Court of Appeals, I adhere to my previously expressed view that the trial court committed no error in denying the defendant's belated request to testify. Subsequent to the close of the evidence and after both defense counsel and the prosecutor had presented their summations, the defendant interrupted the proceedings with the cryptic

comment "[y]our Honor, I haven't had a chance to speak to the jury yet". The trial court immediately excused the jurors and inquired of defense counsel whether the defendant had been advised of proper trial procedures. In view of the court's *Sandoval* ruling *(see, People v Sandoval,* 34 NY2d 371), and the potential prejudice which could result from the exposure of the defendant's criminal history, the defendant and his counsel had apparently concluded that it would not be in the former's best interest for him to testify during the course of trial. Nevertheless, after hearing the convincing case adduced against him, the defendant came forward with an array of attempts to save himself from a conviction. These included requests to (1) deliver a *pro se* summation, (2) summon additional defense witnesses, (3) present to the jurors a *pro se* brief, and (4) belatedly testify on his own behalf. Notwithstanding the defendant's claim that he had never knowingly agreed not to testify in his own behalf, I find his allegations regarding a violation of his constitutional rights to be totally devoid of merit. The defendant's blatant attempt to subvert the proper administration of justice by means of his specious allegations should not be judicially condoned.

The situations presented in *People v Harami* (93 AD2d 867) and *People v Hendricks* (114 AD2d 510), upon which the defendant relies, are patently distinguishable from the instant case. In *Harami* this court specifically found that the defendant's proffered testimony was relevant to ascertaining the defendant's intent at the time of the alleged attempted entry, a key issue at the trial. Under those circumstances, the trial court's failure to alter the order of proof was not susceptible to harmless error analysis. Moreover, the request therein was made after the requests to charge but before the summations. In the instant case, there was no hint of what the defendant's testimony might be. In view of the overwhelming evidence adduced against him, there is no reasonable likelihood that the defendant's belated testimony would have altered the verdict. The facts in *Hendricks* are even more easily distinguishable. There, the defendant had, on several occasions, expressed a desire to testify notwithstanding his counsel's strong exhortations to the contrary. Defense counsel therein admitted on the record that his client had at " 'some moments' " indicated a desire to testify but that it was his understanding that the defendant intended to abide by the advice given him *(People v Hendricks, supra,* at 512). There is no such evidence in the instant case. Another significant distinction is that in *Hendricks,* the defendant's request to

take the stand was made after defense counsel's summation but before the prosecutor's summation. Had the trial court granted the defendant's request in the case at bar, the defendant would have been afforded the advantage of interjecting additional testimony after having heard the prosecutor's summation in contravention of the ordered framework of CPL 260.30. Inasmuch as the defendant's rights were in no way impinged upon, the trial court did not err in denying the request to alter the order of proof.

Nor was any error involved in the trial court's denial of the defendant's motion to suppress the eyewitnesses' in-court identifications of him. Upon observing that the defendant exactly matched the eyewitnesses' description of the perpetrator in both general appearance and as to his clothing and the white bag which he was carrying, and given his flight at the approach of the police and his attempt to abandon the white bag, the arresting officers had probable cause to believe that the defendant was the individual who had committed the burglary (see, People v Mercado, 117 AD2d 627, 629). There was no impropriety attendant upon the showup procedures conducted at the scene of apprehension and minutes later at the police station. Such procedures are justified, particularly when, as here, they are proximate in time and place to the scene of the crime, as a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly (see, People v Hicks, 68 NY2d 234). In any event, inasmuch as the bases for the witnesses' in-court identifications were their observations of the defendant during the incident, and not the allegedly tainted procedures, there were clearly independent sources for those identifications (see, People v Lloyd, 108 AD2d 873, affd 66 NY2d 964; People v Lewis, 123 AD2d 716, 719). In view of the independent sources for all of the in-court identifications and the fact that no testimony was adduced at the trial concerning the in-person identification at the felony hearing, the denial of the defendant's request to waive his presence at the felony hearing was, at worst, harmless error (see, People v Lyde, 104 AD2d 957; cf., People v Cummings, 109 AD2d 748, 749).

In the absence of any meritorious grounds for reversal, I vote to affirm the judgment of conviction.