■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT JOHNSON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Felig, J.), rendered July 25, 1989, convicting him of robbery in the first degree and resisting arrest, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

Contrary to the defendant's contention, we discern no error in the hearing court's refusal to suppress identification testimony based on the showup identification conducted in this case. The record demonstrates that defendant was detained in close physical and temporal proximity to the crime, the police promptly brought the complainant to the scene to view him, and the showup procedure employed was not unnecessarily suggestive under the circumstances presented (see, People v Duuvon, 77 NY2d 541; People v Hicks, 68 NY2d 234; People v Moore, 156 AD2d 394; People v Lewis, 123 AD2d 716).

We further reject the defendant's contention that the trial court improperly refused to admit into evidence the police complaint report to demonstrate that the complainant had made a prior statement inconsistent with his trial testimony. The issue of the admissibility of a prior inconsistent statement for the purpose of impeaching a witness is addressed to the sound discretion of the trial court, and its determination will not be set aside absent an improvident exercise of that discretion (see, People v Auricchio, 141 AD2d 552). Given the lack of a proper foundation for the admission of the report (see, Richardson, Evidence § 502 [Prince 10th ed]) and the uncertainty as to the source of its contents, we discern no improvident exercise of discretion in its exclusion. In any event, even if the court's ruling could be deemed erroneous, the defendant's counsel clearly conveyed the information within the report to the jury during his examination of the police witnesses at trial, and the jury therefore was made aware of the purported inconsistencies and alterations in the document (see, People v Maisonave, 140 AD2d 545; People v Henson, 113 AD2d 954). Accordingly, the defendant suffered no prejudice as a result of the court's ruling.

Viewing the evidence in the light most favorable to the People (see, People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (see, CPL 470.15 [5]). Insofar as the defendant challenges the credibility of the prosecution witnesses, we note that the resolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury, which saw and heard the witnesses (see, People v Gaimari, 176 NY 84, 94). Its determination should be accorded great weight on appeal and should not be disturbed unless

clearly unsupported by the record (see, People v Garafolo, 44 AD2d 86, 88). We discern no basis for disturbing the jury's determination in this case.

We have considered the defendant's remaining claims of error and find them to be either unpreserved for appellate review, without merit, or harmless under the circumstances of this case. Kunzeman, J. P., Sullivan and Rosenblatt, JJ., concur.

Harwood, J., dissents and votes to modify the judgment, on the law, by reversing the conviction for robbery in the first degree, granting that branch of the defendant's omnibus motion which was to suppress identification testimony, and dismissing that count of the indictment, with the following memorandum: The complainant, a letter carrier, was approached from behind and robbed at about noon as he was putting mail into a "bank" of mailboxes at 240 Park Hill Avenue in Staten Island. The complainant chased the fleeing assailant, but gave up the chase after a short time and returned to the mailboxes. He then went to the security office at the Park Hill address to report the incident and, finally, returned to the Stapleton Post Office. At approximately 2:30 P.M., the complainant was "told [by police officers] that they had a suspect in custody and they wanted [him] to go [to the Park Hill address] for a positive I.D.". As they drove the complainant from the post office to Park Hill, the police officers also told the complainant the suspect's name, i.e., that of the defendant. Although the defendant's name then meant nothing to the complainant, the police evidently mentioned the name because of its significance to them. Upon arrival at the Park Hill address, the complainant observed the defendant, in handcuffs and in the company of police officers, but not civilians, and identified him as the person who committed the robbery.

The majority concludes that the police acted "promptly" and that there was a "close physical and temporal proximity" between the crime and the defendant's apprehension, so as to justify the identification procedures used here (see, People v Duuvon, 77 NY2d 541). It is my view, however, that the facts do not support these conclusions.

While it is true that the defendant, who was already known to police, was apprehended only a block from the Park Hill address, it is also true that his "proximity" to the crime scene is readily attributable to the fact that he lived in the neighborhood. Of more significance is the fact that the defendant's apprehension and the ensuing showup took place two and one-

half hours after the crime, hardly the three or four minutes constituting "one unbroken chain of events" *(People v Duuvon, supra,* at 544-545), which the Court of Appeals recently ruled was within the permissible boundaries governing "generally suspect and disfavored" showups *(People v Duuvon, supra,* at 543). Moreover, even if the showup conducted here had indeed been "prompt", it could hardly have been more suggestive. The fact that the defendant was in handcuffs and in the company only of police officers "presses judicial tolerance to its limits" *(People v Duuvon, supra,* at 545). The fact that the police informed the complainant that they had a suspect "in custody", whom they could already name, served no purpose other than to convey to the complainant police assurances that the suspect he was about to view was indeed "the right man", thus pressing judicial tolerance even further.

I conclude that the identification testimony of the complaining witness, who viewed his assailant only during the course of an unsuccessful chase, was irreparably tainted by the suggestive showup which cannot be justified by any exigent circumstance *(cf., People v Duuvon, supra).* My concerns are heightened by the trial evidence, which included the testimony of the police officer who spoke to the complainant immediately after the incident and who recorded the information that the robber wore a red shirt and that whether he had facial hair was "unknown", whereas the defendant, when arrested, was wearing a blue shirt and sported a mustache and goatee. My concern is intensified by the trial references to a police report, which the majority rules was properly withheld from the jury, despite the People's concession during trial colloquy that the report had been altered by changing the word "red" to "blue" in describing the robber's shirt. In short, because the only evidence of the defendant's guilt of robbery is the tainted identification testimony, which should have been suppressed, the robbery conviction should be reversed and that count of the indictment dismissed.