■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VIRGILIO FORTUNATO, Appellant. [594 NYS2d 245] —Judgment, Supreme Court, Bronx County (Stephen L. Barrett, J., at identification hearing; Emily Jane Goodman, J., at jury trial), rendered August 1, 1990, convicting defendant of murder in the second degree and criminal possession of a weapon in the second degree, and sentencing him to concurrent terms of 18 years to life and 2 to 6 years, respectively, unanimously affirmed.

There is no merit to defendant's argument that the prosecutor's summation was an attempt to affirmatively mislead the jury as to the significance of the evidence concerning the shooter's gray patch of hair. First, the premise underlying the argument—that it was error to allow the eyewitness to testify that he had described the shooter's gray patch of hair to the police—is faulty, since a description is ordinarily admissible if offered by a person who has previously identified the accused *(People v Candelario,* 156 AD2d 191, *lv denied* 75 NY2d 964). Second, the prosecutor's use of a photograph depicting defendant with a gray patch of hair for purposes of impeaching one

of defendant's alibi witnesses did not compel defense counsel to speculate in summation that the photograph had been shown to the People's eyewitnesses, it being a matter of record, developed in the pretrial hearings, that both eyewitnesses had identified defendant through photographs. Having chosen to make use of this evidence, counsel then took advantage of the rule against the introduction of photographic identifications by asking the jury to indulge in speculation for which no evidence was offered at trial, and to which the prosecutor, aware that both witnesses had seen a picture of defendant, raised an argument consistent with the facts presented at trial. Given these circumstances, and the eyewitnesses' familiarity with defendant, the prosecutor's summation does not require a reversal.

The prosecutor did not expressly deny that the eyewitnesses had seen defendant's photograph before the trial, and while she may have come close to mischaracterizing the evidence through omission, her words, carefully examined, show that while she at first belittled counsel's argument, she then switched themes, arguing that the jury should remember the eyewitnesses' testimony.

Nor was it error to refuse defendant's offer of the UF-61 report into evidence. The report was a summary of what the police officer was told by the two eyewitnesses, and, in the circumstances presented, the apparent composite description recorded in the report without attribution was not an inconsistent statement *(see, People v Johnson,* 122 AD2d 812, 813). In any event, contrary to defendant's claim that the absence of the report was "devastating", counsel liberally read from the UF-61 in examining the eyewitnesses, and the officer was extensively questioned about the report's preparation. Accordingly, the defense enjoyed the benefits of the report even though it was not introduced into evidence *(see, People v Johnson,* 176 AD2d 269, 270). Concur—Murphy, P. J., Sullivan, Rosenberger, Asch and Rubin, JJ.