Charles A. Loreto, J.
In this habeas corpus proceeding it is asserted that the relator Pugach is legally insane and is illegally detained in Bronx City Prison and, further, is presently being illegally tried by a Judge and jury in Bronx County Court.
Relator is a young attorney. The indictment on which he is being tried charges him with having acted in concert with another in committing burglary in the second degree, maiming, assault in the second degree and conspiracy. It is claimed that he hired another person to throw lye in the face of a young lady when she rebuffed his persistent urgings to marry him.
Prior to the commencement of the trial on this charge, he was sent to Bellevue Hospital for psychiatric observation and the hospital psychiatrists expressed the opinion that he was suffering from schizophrenia of the paranoid type and that he could not stand trial. However, his then attorney produced the testimony of two other psychiatrists who testified to the contrary at a hearing held before Acting County Judge Silver on May 24 and 25 and June 1 and 6, 1960. The said Justice ruled that the relator could stand trial.
For the purpose of this determination, it is unnecessary to relate all of the history and conduct of the relator bearing on the contentions of his attorneys that he is insane and on the opinion of the District Attorney and Trial Judge to the contrary. The latter are convinced that the relator’s conduct since his arrest has been designed to impede and disrupt his orderly trial upon the criminal charge, whereas his attorneys earnestly plead that it should be arrested because of his present insanity.
*335 Whatever may have been his mental condition prior to this trial, as to which his attorneys also point out that he had been admitted to Jacobi Hospital in 1958 where he was found to have suicidal ideations, having stated that he would blow his brains out, they insist that his condition has worsened during his trial in the Bronx County Court which commenced on April 10, 1961. Together with other manifestations of his conduct, they point to an incident when, entering the courtroom for one of the court sessions on June 15, he broke his eyeglasses and slashed his wrists. They state that he intended to commit suicide and expressed his desire to die IC before the public like Jesus Christ that he has a 24-hour guard; that his pants belt and eyeglasses have been taken away; and that they are unable to confer with him and properly represent him because of his insanity. They assert that they have made a motion before the County Judge for a sanity hearing or that he send relator to Bellevue for further examination and that these applications were denied.
Essentially upon such a showing relator sued out a prior writ of habeas corpus on June 26. This court then observed that it appeared that the determination of the Trial Judge was based upon the consideration of his observations and evaluation of the conduct of the relator in court as opposed to the observations and opinion of his attorneys and that, since no new substantial evidence, such as opinions of psychiatrists based on current examination, of his present condition had been submitted for consideration by the Trial Judge, the writ was dismissed.
Following that denial, relator’s attorneys renewed their motion for a sanity hearing before the Trial Judge, submitting the affidavits of two psychiatrists, Dr. Leo L. Orenstein and Dr. Max Helfand, both sworn to June 21, 1961, in which they state their qualifications, prior examination of relator and more recent examination held on June 10 and 15, 1961, respectively. Dr. Orenstein affirms ‘ ‘ That it is my opinion because of the severity of the schizophrenic reaction, burton n. pugach is now in such a state of insanity as not to be able to confer with counsel nor to comprehend the present trial proceedings.” Dr. Helfand concludes his affidavit: “ That in my opinion burton n. pugach suffers from an advanced form of Schizophrenia of the Paranoid type and that he is not mentally competent to differentiate between right and wrong. Further, it is my opinion that he is not capable of consulting with his attorneys in the preparation or presentation of his defense.”
Based upon his observations of the relator and a study of these affidavits, the Trial Judge denied the renewed motion for *336 a sanity hearing — stating his opinion on the record, which, in part, is as follows:
It is this court’s studied opinion that throughout this trial, Pugach has embarked upon a calculated, premeditated and predetermined course of conduct and procedure aimed at not only obstructing, impeding or delaying the progress of this trial hut to bring about a mistrial or disruption of this trial in toto in some way, manner or form.
Prom the observations of this court throughout this protracted trial from the very first day in the selection of the first juror, the defendant, Pugach, has appeared to be rational and has actively participated and engaged in the handling of his defense.
This court has observed, on numerous occasions, Pugach engaged in animated conversation with not only his own counsel but with Mr. Sanders, counsel for the defendant, Harden. He has appeared alert and interested in the proceedings and the Court has particularly observed that Pugach on very frequent occasions forwarded notes and other memorandum which the Court observed him writing, to both his attorney and to Mr. Sanders, which appeared to offer suggestions, recommendations, objections and advice with respect to the interrogation of witnesses or questions of law, and counsel appeared to this court to read the notes and follow through with the thoughts expressed on paper.
On at least one occasion Pugach saw leave to personally argue a point of law in defense of his ease. Even prior to the commencement of this action, Pugach personally appeared before this court and argued numerous motions and his arguments were mostly lucid and intelligent (pp. 2739-2740).
Nevertheless the Court is reluctant to accept at face value the declaration by Pugach’s attorney that he has become incoherent and is unable to confer with him any longer. This Court has come to a contrary conclusion from its lengthy observations of the defendant.
Had it not been for numerous tactics employed heretofore to delay or otherwise disrupt this trial the Court might have placed some credence in the sudden antics of Pugach on June 15-th when he cut his wrists. Even this maneuver seemed to be timed so as to upset the trial in some manner and again in that connection when the Court denied the application of Counsel for immediate commitment, stating among other reasons that the wounds were superficial, it is significant to note and his words are in the record that Pugach arose and said, “You don’t frighten me in the least by the superficial wounds. I have over twenty stitches in my hand, but I will be dead before this trial is over. I intend to be dead before this trial is over. You can’t stop me.”
These words of Pugach are most indicative to this Court of his predetermined attitude that this case shall never come to completion. These wounds were inflicted at the very entrance into the courtroom and this Court has been advised by the Court Attendants that Pugach deliberately wiped his forehead with blood from his wrists so as to make it appear that he had been seriously injured (pp. 2741-2742).
The affidavits submitted to this Court have been carefully studied, as has the record of the sanity hearing held last year, in which this defendant through his own psychiatrists established his sanity to stand trial. Coupled with this review, the Court has taken into consideration its lengthy observation of the defendant Pugach • together with defendant’s conduct even after his wrists had been slashed. This Court has deliberated upon the affidavits of the psychiatrists, upon the record of the sanity hearing, upon the conduct of the defend-nt throughout the trial and during the proceedings preceding the trial. This Court is convinced that there is no basis upon which to hold a sanity hearing *337 again at this time. The Court does not feel that Counsel for Piigaeh has submitted sufficient reasons to warrant a disruption of this twelve weeks of trial and this Court does not intend to nor will it be a party to any calculated and insidious design on the part of this defendant to procure a mistrial or disrupt the present trial (pp. 2743-2744).
This Court does not feel that the motion is brought in good faith and accordingly, after due deliberation and in the exercise of discretion, this motion is in all respects denied and counsel are directed to proceed forthwith. An exception to the defendant (p. 2745).
Upon the trial court’s denial of relator’s last motion for a sanity hearing, this second writ was sued out. It is argued that the relator’s motion was peremptorily denied by the Trial Judge. However from this partially quoted opinion, it appears that he gave the motion considerable thought and attention. This court is impressed with the fact that the prosecutor and Trial Judge earnestly believe the relator to be a malingerer and that his attorneys also with sincerity believe their client to be insane.
The question before the court then in this posture of the record is — does a writ of habeas corpus lie. It is common knowledge that there are different types of insanity and different times when a person may be suffering from any form of insanity or any particular stage of insanity. The claim here is not of insanity at the time of the commission of the crime which would absolve the relator of guilt. The claim is of insanity arising during trial which would require a suspension of the trial. Authority for this is statutory. Section 1120 of the Penal Law reads: “A person can not be tried, sentenced to any punishment or punished for a crime while he is in a state of idiocy, imbecility, lunacy or insanity so as to be incapable of understanding the proceeding or making his defense.” (Italics supplied.)
In our civilized society where the dignity of the individual is recognized and safeguards for his personal rights are observed, it would be a regression to barbaric days to conduct the trial of an insane person. The statute merely enunciates the dictates of reason and the refinement of our civilization. It has been held that one of the guarantees of the Bill of Bights is that an accused in a Federal court have the assistance of counsel for his defense and that this is one of the safeguards necessary to insure fundamental human rights of life and liberty (Glasser v. United States, 315 U. S. 60, 69; McNeal v. Culver, 365 U. S. 109).
Such is the holding when the accused is sane. When he is insane, in that he is incapable of understanding the proceeding or making his defense, the presence or assistance of counsel at his trial may be of little or no help. It cannot reasonably be *338 considered adequate for his defense and full protection. The fact that the accused is in such a mental condition makes it impossible to accord to him a “ fair trial ”, which is constitutionally vouchsafed to him.
Therefore, it behooves the trial court when the defendant clearly demonstrates such a mental state to suspend the trial. For to what avail would it be to continue it to its conclusion, procure his conviction, when it will be vacated for this reason on appeal or in a coram nobis proceeding (People v. Smyth, 3 N Y 2d 184; People v. Hill, 9 A D 2d 451, 453). Of course, the trial might result in acquittal and that would end the matter. However, it cannot be said that justice was done, as an injustice would have been committed in the denial of the defendant’s statutory, if not constitutional, right.
Strikingly significant to the question of the propriety of the writ of habeas corpus here is the recent case of People ex rel. Brown v. Johnston (9 N Y 2d 482), decided April 27, 1961. There the relator by a writ protested his transfer and confinement after conviction to a penal institution with deranged prisoners. Although held in restraint and confinement by virtue of a final judgment, it was held:
“ [I] t seems quite obvious that any further restraint in excess of that permitted by the judgment or constitutional guarantees should be subject to inquiry. * * *
‘ ‘ Since the writ of habeas corpus has traditionally been relied upon to alleviate the oppression of unlawful imprisonment and abuses of similar character, it can he invoked to obtain a hearing to test the validity of a commitment in an institution for the criminally insane. We cannot merely by virtue of the valid judgment sanction the subsequent abrogation of lawful process.
“ The State’s right to detain a prisoner is entitled to no greater application than its correlative duty to protect him from unlawful and onerous treatment (Ann. 155 A. L. R. 145, 146), mental or physical. ‘ [R]elief other than that of absolute discharge ’ should be forthcoming [citing cases].
“ To implement this duty and secure the relief due the prisoner, we can and should recognize that 1 [C]ourts have always asserted and exercised authority which, though perhaps not expressly established by statute, is “ based upon the inherent right and duty of the courts to protect the citizen in his constitional prerogatives and to prevent oppression or persecution ” ’ [citing cases] ” (p. 485).
Can it not be also said that the continuance of a criminal trial of an accused incapable of understanding the proceeding or *339 making Ms defense is not a species of oppression, a violation of Ms constitutional right — an arrogation of power in excess of constitutional guarantee to the individual? A defendant in such a plight surely is an aggrieved person. And where the issue as to his sanity during trial is genuine and bona fide raised, he should be permitted to offer his proof to establish it.
When and how this should be permitted and accomplished during the course of a criminal trial poses serious questions. Surely no one would seriously contend that the Trial Judge should suspend the trial to conduct a separate sanity hearing every time it is claimed that the defendant is or has become insane during the trial. If this were done, such a stratagem could be employed to disrupt a trial whenever a defendant might feign such a condition because of fear of conviction or any other conceivable reason. Undoubtedly there may be the highly sensitive and delicate individual whose reason could actually be unseated and who could be deprived of any capacity to understand the proceeding or make his defense because of the shame and stigma of the charge and trial, the prospect of conviction, the dread of imprisonment and the horror of execution in a capital case. In the latter instance, the claim of insanity should not be peremptorily dismissed.
The statute leaves it entirely with the trial court to pass upon whether the defendant should be examined to determine his sanity. Section 658 of the Code of Criminal Procedure reads: “If at any time before final judgment it shall appear to the court having jurisdiction of the person of a defendant indicted for a felony or a misdemeanor that there is reasonable ground for believing that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making Ms defense, or if the defendant makes a plea of insanity to the indictment, instead of proceeding with the trial, the court, upon its own motion, or that of the district attorney or the defendant, may in its discretion order such defendant to be examined to determine the question of his sanity.”
The discretion given to the trial court by the statute is clearly a wide and onerous one. He may refuse to exercise it in any case. In the exercise of his discretion, he may refuse to permit an examination on the question of sanity even if reasonable ground for believing the defendant is incapable of understanding the proceedings or maMng his defense exists. Here, the Trial Judge upon his observations was satisfied that no mental examination was warranted. Nor may his conclusion be deemed unfounded. That the relator’s attorneys charge bias and prej *340 udice and an arbitrary dismissal of their application for a sanity hearing affords the relator no basis for intervention by this proceeding.
When the question was raised, after plea and sentence in a coram nobis proceeding, the Court of Appeals (People v. Smyth, 3 N Y 2d 184, 186, supra) stated: “it requires more to sustain such a writ than merely showing that he applied for psychiatric examination when he pleaded guilty. Even if he did so apply, it would have been in the discretion of the court to determine whether or not his application should have been granted (People v. Nickerson, 1 N Y 2d 815). The exercise of discretion by the trial court would have been final unless abused.” (Italics supplied.) The Court of Appeals did not consider what would “ constitute an abuse of discretion either in the realm of fact or law ” (p. 187) in declining to direct a mental examination under section 658 of the Code of Criminal Procedure since the record was devoid of proof of insanity. At bar, the record contains substantial proof, if credited, of insanity. Nonetheless, this court cannot hold that there was an abuse of discretion.
The ruling of the trial court may be found on appeal to be error. Or another Judge, in the exercise of his discretion, might have ruled otherwise. However, on this record it cannot be held that there was a total lack of exercise of discretion or an abuse of discretion. Although People v. Nickerson (1 N Y 2d 815, supra) deals with the question after trial, its opinion is broad enough to cover the situation here presented if there were an abuse of discretion in fact or law. No instance where this question has previously been passed upon in our courts has been found or called to the court’s attention.
Since the criminal trial has been under way for 12 weeks and lacks but the defendant’s proof to complete it, this court fails to discern the propriety or necessity to interfere with the trial when it is not clear that the relator’s statutory or constitutional right has been denied him and, as already indicated, he will not be without recourse if error has been committed.
In conclusion, the court holds that as habeas corpus is the proper remedy to test the right of an accused to a sanity hearing before trial (People ex rel. Fazio v. McNeill, 4 A D 2d 686), after trial (People v. Nickerson, supra), and also as to wrongful confinement after conviction (People ex rel. Brown v. Johnston, supra), it should be available during trial in a proper case where there has been an abuse of discretion or a failure to exercise discretion.
However, in considering the application for a writ during trial, it would be advisable for the court to hold before it the *341 observation made in People v. Esposito (287 N. Y. 389, 395) in the opinion written by Judge Conway for the court: ‘“We think the motion rested in the discretion of the court, and it was justified in denying it. It is certainly a startling proposition to think that a prisoner can, at his pleasure, arrest the regular and orderly administration of criminal law by raising collateral issues indefinitely, and thus delay, and, perhaps, defeat a trial under an indictment. The law has made ample provision for the protection of all a prisoner’s rights, but it does not put it in his power to paralyze the administration of justice.’” The writ is, therefore, dismissed.