■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY HARRIS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered August 2, 1978, convicting him of two counts of robbery in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial of defendant's motion to suppress the identification testimony of one of the two complaining witnesses. Judgment reversed, on the law, defendant's motion to suppress the identification testimony of Jerry Cruz granted, and new trial ordered. Among the more compelling reasons for reversal in the instant case, it is our belief that Criminal Term erred in refusing to suppress the identification testimony of one of the two complaining witnesses, 15-year-old Jerry Cruz. At the *Wade* hearing, Cruz testified on direct that he never saw the perpetrator during the commission of the instant crime and that he was unable to describe what his assailant had been wearing. Instead, he testified that when he and the other complaining witness, his 16-year-old brother, Fred, went to police headquarters, it was the latter who furnished the description of the perpetrator, and implied rather plainly that he (Jerry) was able to identify the defendant solely because his brother had been able to do so. In this regard, it is important to note the photographic identification procedure employed by the police in this case was impermissibly suggestive as both of the complaining witnesses were permitted to view the photographs together. Thus, at the *Wade* hearing, Jerry Cruz testified that it was his brother, Fred, who had turned the knob of the Mira-Quik machine in order to rotate the pictures, and it was Fred rather than himself who had stopped the machine when he (Fred) observed a photograph of the defendant. Jerry, it would appear, was unable to identify the photograph and merely went along with his brother's selection, which then became the basis for his (Jerry's) in-court identification of the defendant. This is precisely the danger of joint showups which we condemned in *People v Leite* (52 AD2d 895) because "The possibility, and even the likelihood, that an identification by one of the viewers would influence or cause an identification by the others was patent." Accordingly, in the absence of overwhelming independent evidence of guilt (see *infra),* it is our belief that on this basis alone the judgment must be reversed and a new trial ordered. There was,

however, a further error committed by Criminal Term when it refused, in effect, to order a hearing on defendant's posttrial motion to set aside the verdict on the ground of newly discovered evidence. Prior to sentencing, the defendant was for the first time able to locate and obtain affidavits from two individuals who claimed that they had overheard one Timothy McQueen, a supposed "look-a-like" of the defendant, admit that he (McQueen) had committed the crime for which the defendant had been arrested. Notably, the identification evidence offered at trial had not been particularly strong. Thus, in addition to the improperly admitted testimony of Jerry Cruz, the only remaining eyewitness was his brother, Fred, who had been the defendant's regular newspaper delivery boy for several months preceding the crime, and who, according to his own testimony, had seen the defendant just minutes before the robbery while making his weekly collection. Fred, however, did not go immediately to the police and tell them that the defendant, whom he knew, was the perpetrator. Rather, he only identified the defendant after seeing his photograph at the police precinct one week later. The defense, however, was able to adduce testimony from the defendant's father that the alleged "look-a-like", Timothy McQueen, had been visiting the defendant's home when the newspaper boy (Fred Cruz) came to collect, and that, within a few minutes after the latter had come and gone, both McQueen and the defendant had gone out together. In addition, whereas the newspaper boy had testified that the robber had worn a certain type of coat during the robbery, the defendant's father testified that the defendant did not even own such a coat. Finally, a second defense witness (a neighbor) was able to testify that he had seen the defendant and another individual (presumably, McQueen) leave the defendant's home just minutes after the newspaper boy had left, and that the second individual then parted company with the defendant and walked off in the same direction that the Cruz boys had taken, while the defendant had crossed the street and come into that witness' house. Under these circumstances, it is at least arguable that the newly discovered evidence might have resulted in a verdict more favorable to the defendant, and therefore Criminal Term should not have decided the motion without conducting a hearing at which the affiants might testify (see *People v Daniels,* 48 AD2d 905). As there must, of necessity, be a new trial, we deem it advisable to note that the trial court's charge, when viewed as a whole, tended to denigrate the defendant's case while calling upon the jury to sympathize with the complainants. Although, perhaps, harmless in a case where the evidence of guilt was overwhelming, we do not believe that the effect of this charge may be considered harmless under the circumstances of the instant case. We have considered the other points raised by the defendant and find them to be without merit. Damiani, J. P., Gulotta, Margett and Weinstein, JJ., concur.