OPINION OF THE COURT
John Copertino, J.
Defendant moves for an order “granting a hearing for the purpose of suppression of the evidence intended to be offered by the District Attorney at the trial of this action” namely, incriminating statements made by defendant during the course of a competency hearing. The People oppose the defendant’s application on the ground that they “know of no legal impediment” to the introduction of this evidence.
The facts relevant to the present motion are as follows. Defendant was charged with robbery in the first degree in the Suffolk County District Court, whereupon, a psychiatric examination was ordered pursuant to CPL article 730 to determine defendant’s capacity to stand trial. On December 3, 1979, a hearing was held in that court to determine the issue of capacity, at which hearing both psychiatric examiners testified regarding their finding that defendant was an incapacitated person. In order to controvert the findings of the examining psychiatrist, defendant took the stand and on direct examination by his attorney made incriminating statements with respect to the crime for which *339 he is charged. The People now intend to offer these statements at trial as part of their direct case.
The question presented to this court, which appears to be one of first impression in this State., is whether statements made by a defendant while testifying at a hearing held to determine his fitness to stand trial pursuant to CPL 730.30, are admissible on the trial of the action as evidence-in-chief.
Although no cases have been found in this State on this issue, the United States Court of Appeals for the Fifth Circuit has stated that such testimony is inadmissible at trial (Pedrero v Wainwright, 590 F2d 1383, 1398, n 3) relying on the United States Supreme Court decision in Simmons v United States (390 US 377).
In Pedrero, defendant sought Federal habeas corpus relief on the grounds, inter alla, that the State had violated his right to due process of law by its failure to grant him an adequate hearing on his competency to stand trial. The Federal District Court held that defendant had not been constitutionally entitled to a competency hearing because he had failed to raise a bona fide doubt as to his competency. On appeal to the Fifth Circuit, defendant argued that his failure to raise a bona fide doubt as to his competency was in part the result of the trial court’s denial of his request that he be permitted to testify at his arraignment with regard to his competency without waiving his privilege against self incrimination. The Court of Appeals, despite the fact that it affirmed the District Court’s results, nevertheless ruled that the defendant should have been permitted to testify without penalty: “Had Pedrero testified at the arraignment in support of his insanity defense or his incompetency claim, that testimony could not have been admitted at trial over his objection. Simmons v United States, 1963, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247. * * * The error * * * does not warrant reversal, however. Pedrero’s testimony would have been self-serving and would not, by itself have raised a bona fide doubt as to his competence to stand trial.” (Pedrero v Wainwright, 590 F2d 1383, 1388, n 3, supra.)
Most important — for present considerations — the court *340 held that had statements been made by defendant at the competency hearing, the United States Supreme Court’s decision in Simmons v United States (390 US 377, supra) would have rendered them inadmissible at trial.
In Simmons, the Supreme Court ruled that “when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection” (Simmons v United States, supra, p 394). The court, although realizing that a defendant who wished to challenge the admissibility of evidence could refuse to testify and possibly sacrifice the potential benefit in having such evidence suppressed, nevertheless stated that it was “intolerable that one constitutional right should have to be surrendered in order to assert another” (Simmons v United States, supra, p 394). Moreover, the language used by the court did not limit this reasoning to a situation where the potential benefit to the defendant was based solely on a Fourth Amendment claim but rather extended it to any “situation in which the ‘benefit’ to be gained is that afforded by another provision of the Bill of Rights” (Simmons v United States, supra, p 394). Indeed, Federal courts have held the Simmons rationale to apply to a defendant’s testimony at hearings to suppress involuntary confessions (United States v Harrison, 461 F2d 1127), hearings where a defendant is seeking forma pauperis relief (United States v Branker, 418 F2d 378), parole revocation hearings (Melson v Sard, 402 F2d 653), hearings to determine whether a defendant’s right to be free from double jeopardy is being violated (United States v Inmon, 568 F2d 326) as well as competency hearings (Pedrero v Wainwright, supra). Further, it has been stated that one may validly conclude that the lower courts have accepted and applied Simmons enthusiastically in the context of pretrial hearings (Note, Resolving Tensions Between Constitutional Rights: Use Immunity in Concurrent or Related Proceedings, 76 Col L Rev 674, 696).
This court finds the reasoning of Simmons to be compelling under the facts of this case. In seeking a determination as to his competency, defendant is asserting a fundamental *341 right. It is well settled that “conviction of an accused person while he is legally incompetent violates due process” (Pate v Robinson, 383 US 375, 378) and denies him a fair trial (Pate v Robinson, supra, p 385). It has also been suggested that to try a person who is not competent violates the Sixth Amendment’s right to counsel (see People ex rel. Pugach v Klein, 30 Misc 2d 334). The fact that defendant herein took the stand at his competency hearing not to assert that he was incompetent but in order to controvert the psychiatrists’ findings that he was not competent to stand trial does not alter this court’s conclusions.
Under CPL 730.40 a defendant who is charged in a local Criminal Court with a felony and who is found incompetent after a hearing, candbe committed for as long as 90 days to the custody of the State Commissioner of Mental Hygiene. At the expiration of this period, defendant can, under CPL 730.70, be retained for a further period of 30 days during which time the superintendent of the institution in which the defendant is lodged, can take steps to commit him civilly (CPL 730.70). All of this assumes continued incapacity and nonindictment. If the defendant should regain capacity at any time prior to the expiration of 90 days, then the proceedings against him would continue from the point they were suspended (CPL 730.60, subd 2). If the defendant were to be indicted while under an order of temporary observation, he would be brought before the superior court for arraignment (CPL 730.40, subd 5) and the court could then order a further examination pursuant to CPL 730.30 (subd 1). At this point, the provisions of CPL 730.30 (subds 2, 3, 4) and CPL 730.50 would apply. Under CPL 730.50 incompetency can result in commitment for as much as one year after which defendant would be, if the superintendent is of the opinion he is still incapacitated, entitled to a new hearing (CPL 730.50 subd 2). If he were to be again found incompetent, he could be retained for still another year (CPL 730.50, subd 2). Thereafter, retentions would endure for periods of two years so long as the total period did not exceed two thirds of the maximum term of imprisonment for the highest class felony charged in the indictment (CPL 730.50, subd 3). Of course, this continued retention would be necessarily subject to the *342 limitations imposed by Jackson v Indiana (406 US 715; cf. People v Arendes, 92 Misc 2d 372 and cases cited therein) that is, that defendant “who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future” (Jackson v Indiana, supra, p 738). Nevertheless, under New York’s statutory scheme, a defendant charged with robbery in the first degree, a class B felony, could conceivably be committed for a period of 16% years were he to be found incompetent at each of these hearings. This period of confinement would in all likelihood be longer than the sentence a defendant would receive were he to be convicted as a first felony offender.
It is a basic tenet of constitutional law that due process requires that a person proceeded against in judicial proceedings which may result in a deprivation of liberty or property be afforded an opportunity to be heard (NY Const, art I, § 6; see People ex rel. Ascencio v Warden of Women’s House of Detention, 28 Misc 2d 460). Were a defendant denied a full opportunity to challenge the results of a psychiatric determination in a competency hearing — where, as has been shown, his liberty is at stake — due process safeguards would unquestionably be violated. This is not to say, however, that defendant could not take the stand and testify at his competency hearing. In so doing, however, he would run the risk of making incriminating statements that might later be used against him at trial as the People intend to do here. This would result in the same dilemma that existed in Simmons and its progeny, namely, whether to forego the benefit of due process to which a defendant is entitled under the Constitution, or to forego his privilege against self incrimination. As has already been noted the Supreme Court has decided that the surrender of one right in order to assert another is “intolerable” and has required that so-called use immunity cloak testimony given at suppression hearings.
Although it has been suggested that Simmons seems to support an “absolute approach” to the problem of conflict *343 ing constitutional rights — mandating use immunity in all situations where such a conflict arises (see Note, 76 Col L Rev 674, supra) — two subsequent cases have not supported such a conclusion. In McGautha v California and Crampton v Ohio, two cases decided together (402 US 183), the Supreme Court had the opportunity to apply the Simmons rule and declined to do so. In Crampton, petitioner had been convicted of murder in the first degree without a recommendation of mercy and was sentenced to death. Petitioner claimed a denial of his constitutional rights in that under Ohio’s practice of determining guilt and punishment in a single proceeding, he could not remain silent on the issue of his guilt without surrendering his right to address the jury on the punishment issue. The court, in rejecting petitioner’s claim, held that the Simmons case could not be given “the broad thrust which is attributed to it by [petitioner] ” (McGautha v California, supra, p 213) and stated that where a conflict arises “the Constitution does not * * * always forbid requiring him to choose” (McGautha v California, supra, p 213). In addition, in a recent case, the Fifth Circuit also refused to apply Simmons and held that statements made by a defendant at a bail hearing can be used at trial so long as proper warnings are given (United States v Dohm, 27 Crim L Rep 2317, June 13, 1980). In declining to apply Simmons the Fifth Circuit stated that a defendant at a bail hearing is not required to divulge the facts in his case in order to benefit from the Eighth Amendment right to bail whereas at suppression hearing “the testimony given must necessarily go to the ultimate facts and issues in the case” (United States v Dohm, supra, at p 2318).
This court is of the opinion that despite McGautha and Dohm, the use of defendant’s testimony given at the competency hearing should still be excluded as part of the People’s direct case. McGautha can be distinguished from the present action on two grounds. First, McGautha did not involve two separate proceedings as the case at hand does. Further, there is a definite question as to whether a defendant has the constitutional right to address a jury on the issue of punishment (see Williams v New York, 337 US 241; Specht v Patterson, 386 US 605) while here there *344 is an unquestionable right to due process (Pate v Robinson, 383 US 375, supra).
The Dohm case can also be distinguished from this case. In Dohm, the court concluded that a defendant at a bail hearing need not give inculpatory testimony in order to successfully affect the outcome of the hearing. This court is of the opinion that in a competency hearing a defendant could conceivably be required to testify as to the merits of the action in order to prove his competency, and that a defendant should not be inhibited from testifying thereat if his testimony could ultimately tend to incriminate him.
In determining a defendant’s competency to stand trial, the standard to be applied has been “ ‘whether he [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him’ ” (Dusky v United States, 362 US 402; see, also, CPL 730.10, subd 1). Among the factors to be considered in determining defendant’s competency is whether he has some recollection of the events involved in the crime (People v Miller, 84 Misc 2d 310). A defendant who seeks to prove his competency may in many instances find it to his advantage to take the stand at the hearing and testify as to his knowledge of the facts of the case. In fact, in a recent decision, Matter of Westchester Rockland Newspapers v Leggett (48 NY2d 430, 441), which concerned the closure of a courtroom during a competency hearing, the Court of Appeals while stating that evidence going to defendant’s competency “would ordinarily reveal little or nothing about his possible guilt of the crimes charged”, impliedly recognized that there could be situations where the facts surrounding defendant’s guilt might come into play. It is clear to this court then, that, in certain situations such as the present, a competency hearing could involve testimony by the defendant as to the ultimate facts in issue in the action.
This court also points out that the Simmons rule has recently been re-emphasized by the Supreme Court in United States v Salvucci (448 US 83; see, also, Rawlings v Kentucky, 448 US 98).
*345 . It might be added that such is the strength of the Simmons rule that it has caused the downfall of the automatic standing doctrine of Jones v United States (362 US 257; United States v Salvucci, supra).
Finally, it should be noted that this court’s decision suppresses the use of defendant’s testimony only on People’s direct case. Nothing that is said here, however, prevents the People from using this testimony to cross-examine defendant should he take the stand at trial (see People v Wise, 46 NY2d 321). Defendant’s testimony was not coerced here as was the case in New Jersey v Portash (440 US 450) and thus its introduction, for purposes of impeachment only, will be permitted.
Therefore, this court concludes that the defendant is asserting a right to due process of law when he seeks to testify at a hearing to determine his capacity to stand trial, that it was necessary for the defendant to testify as to the ultimate facts and issues to be determined at trial, and that under the Simmons rule, defendant should not be forced to choose between asserting his right to due process and his privilege against self incrimination. Therefore, statements made by defendant at his competency hearing are not admissible at trial on the People’s direct case.
Accordingly, defendant’s motion is granted to the extent that the People will be barred from using the testimony he has given at his competency hearing on their direct case and is denied insofar as it may seek to bar its use for purposes of impeachment.