■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WENDELL HENDRICKS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Westchester County (McNab, J.), rendered September 23, 1983, convicting him of criminal possession of a weapon in the third degree, reckless endangerment in the second degree, and resisting arrest, upon a jury verdict, and imposing sentence.

Judgment reversed, as a matter of discretion in the interest of justice, count seven of the indictment charging defendant with reckless endangerment in the first degree dismissed, without prejudice to the People to re-present any appropriate charges to another Grand Jury (see, People v Beslanovics, 57 NY2d 726), and new trial ordered pursuant to CPL 470.55 (1) on the counts of the indictment remaining.

The charges at bar were based on defendant's alleged resistance to the execution of an arrest warrant by the police. The evidence against defendant included testimony by several police officers that defendant grabbed and attempted to fire the service revolver of one of the arresting officers. After presentation of the People's case, defendant rested without calling a witness.

During defense counsel's summation, defendant made three outbursts, each to the effect that he had never touched the officer's revolver. At the end of the defense summation, the Trial Judge excused the jury for a brief recess and the following colloquy took place:

"THE COURT: Mr. Hendricks, you are not excused yet. Now, during the course of your attorney's summation here you were making many comments, you were acting in the presence of the jury. Apparently it didn't bother her during the summation she gave. It was an excellent summation. But if you continue that or if you should make further outbursts when the District Attorney is giving his summation and it becomes annoying, I will just have to stop and have you removed from the courtroom. Do you understand that?

"MR. HENDRICKS: Yes, your Honor. That is not the point, your Honor.

"THE COURT: I don't care what the point is.

"MR. HENDRICKS: Yeah, but nobody has been listening to me yet. It has been over a year and nothing has changed yet, your Honor.

"THE COURT: You are not to make any outbursts in front of the jury. You had your opportunity—

"MR. HENDRICKS: I am not making an outburst, your Honor.

"THE COURT: Mr. Hendricks, you had your opportunity to testify.

"MR. HENDRICKS: I have been asking to.

"THE COURT: You have decided not to.

"MR. HENDRICKS: I didn't say I wasn't going to testify.

"MS. METTLER [defense counsel]: Your Honor, I would like to make a record on that point, I think.

"MR. HENDRICKS: I didn't say that. I want to go up there and testify. Nobody else knows how it really went down. Nobody knows. These people in here don't know it. You don't know, Judge, your Honor, how it happened. People came to testify how it really went. I would like to say how it really went. That is what I have been trying for a year and change now, your Honor.

"MS. METTLER: I would like to make a record on this very point, because there could be misunderstanding later on regarding this.

"Mr. Hendricks and I—and I think I should make this part of the record. Mr. Hendricks and I have discussed at length whether or not he should testify. I have discussed [sic] him very, very strongly that he should not testify. Based on all the facts and based on what we have heard so far and based on the rulings and so forth and so on, I have advised him not to testify. There were perhaps some moments—well, there were some moments when Mr. Hendricks did say that he wanted to testify, but I advised him not to testify. And when he had to leave the courtroom just before I was about to present our case, I went out again and advised him not to testify. And it was my understanding as we came back in the door that Mr. Hendricks was going to abide by the advice that I had given him. And for that reason I stood up and said we elected to call no witnesses. I would like to make that clear for the record for myself.

"THE COURT: What effect that has on the final determination is not for me to decide, but what I do decide is and I tell Mr. Hendricks that if he tries to talk out during the summation he will be removed from the courtroom. Do you understand that?

"MR. HENDRICKS: Yes, your Honor. That is not the point that I am saying, your Honor.

"THE COURT: That is my point.

"MR. HENDRICKS: I understand your Honor. I said I understand, Justice, your Honor.

"THE COURT: All right.

"MR. HENDRICKS: What I am saying, Judge, your Honor, I would like to get up on the stand and tell the people how it really went down. That is what I want to do. Do you know what I am saying? Nobody else in this building here know [sic] how the situation went down, unless the officers that came

over here and said it—What I am saying, that to me the incident itself is all completely wrong on the paper work and everything, because they are talking about on 53rd Street. It never happened on 53rd Street. They are talking about an incident that arose on 53rd Street—

"Wait a minute, Miss Mettler. This is my future. I am going to state prison.

"This incident never happened on 53rd Street. This incident happened on 45 Third Street. They are talking about all this incident here. I want to go up on the stand and tell you how it really went down. That is what I am talking about, Judge, your Honor.

"THE COURT: Your time has gone past for that".

Defendant was subsequently found guilty of criminal possession of a weapon in the third degree, reckless endangerment in the second degree, resisting arrest, and attempted escape in the third degree. The attempted escape count was dismissed at sentencing.

Defendant's request to take the stand occurred after defense counsel's summation, but before the prosecutor's summation and before the case was submitted to the jury. "In this State the order of trial in criminal cases is fixed by statute (CPL 260.30, formerly Code Crim. Pro., § 388). The statutory framework however is not a rigid one and the common-law power of the trial court to alter the order of proof 'in its discretion and in furtherance of justice' remains at least up to the time the case is submitted to the jury" (People v Olsen, 34 NY2d 349, 353). In People v Harami (93 AD2d 867), this court reversed the trial court and ordered a new trial when, after the requests to charge the jury, but before summation, the defendant requested to testify on his own behalf and was refused. The holding and rationale of People v Harami (supra, at pp 867-868) are applicable in the case at bar: "[i]n view of the magnitude and fundamental nature of one's right to be heard in criminal proceedings commenced against him (see NY Const, Art I, § 6; CPL 60.15; People v Courtney, 94 NY 490; Connors v People, 50 NY 240; People v Angelillo, 105 Misc 2d 338, 342; Carter v Illinois, 329 US 173, 174), we hold that the trial court abused its discretion in the case at bar by denying defendant's request to take the stand and testify in his own behalf * * * In view of the constitutional magnitude of the error and the fact that it cannot be said that the error was harmless beyond a reasonable doubt, a new trial is required". O'Connor, J. P., Niehoff, Rubin and Lawrence, JJ., concur.