◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFRED WASHINGTON, Appellant.—Appeal by the defendant from a judgment of the County Court, Westchester County (Lomanto, J.), rendered January 10, 1985, convicting him of burglary in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification evidence.

Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.

The defendant was tried, *inter alia,* on charges of burglary

in the second degree after he was allegedly seen entering an upper-story apartment window via the building's fire escape and thereafter exiting the window while holding a bag of stolen property. At the conclusion of the trial, after closing arguments but before the court's charge to the jury, the defendant expressed a desire to testify. Out of the presence of the jury, defense counsel explained that he and the defendant had discussed the possibility of the defendant testifying, but had concluded that it would not be in his best interest. The defendant denied that he had decided against taking the stand, and stated that he believed he had up until a certain point (which, unbeknownst to him, had passed) to make his decision.

Under similar circumstances this court has held: " 'In this State the order of trial in criminal cases is fixed by statute (CPL 260.30, formerly Code Crim. Pro., § 388). The statutory framework however is not a rigid one and the common-law power of the trial court to alter the order of proof "in its discretion and in furtherance of justice" remains at least up to the time the case is submitted to the jury' (People v Olsen, 34 NY2d 349, 353). In view of the magnitude and fundamental nature of one's right to be heard in criminal proceedings commenced against him (see, NY Const, art I, § 6; CPL 60.15; People v Courtney, 94 NY 490; Connors v People, 50 NY 240; People v Angelillo, 105 Misc 2d 338, 342; Carter v Illinois, 329 US 173, 174), we hold that the trial court abused its discretion in the case at bar by denying the defendant's request to take the stand and testify in his own behalf * * * In view of the constitutional magnitude of the error and the fact that it cannot be said that the error was harmless beyond a reasonable doubt, a new trial is required (see, People v Almestica, 42 NY2d 222; People v Crimmins, 36 NY2d 230)" (People v Harami, 93 AD2d 867, 868; see also, People v Hendricks, 114 AD2d 510).

Therefore, the judgment of conviction must be reversed, and a new trial is ordered.

In addition, although not reversible error in itself, we note that the defendant's request to waive his presence at the felony hearing held in the City Court of Mount Vernon, where he was identified by one of the eyewitnesses and the arresting police officer, should have been granted (see, People v Lyde, 104 AD2d 957; People v James, 100 AD2d 552). Accordingly, at the defendant's retrial, the People may not elicit any testimony regarding those identifications.

Our review of the record also leads us to conclude that that

branch of the defendant's omnibus motion which was to suppress testimony pertaining to his postarrest showup identifications should have been granted in part. The hearing court properly ruled that the witness John Reed may testify regarding his at-the-scene identification of the defendant as he sat in a police car. "[P]rompt on-the-scene showups are generally held to be proper because, based on fresh recollections of recent events, they insure reliable identifications of perpetrators and the prompt release of innocent suspects" *(People v Soto,* 87 AD2d 618, 619). However, the witness James Mason may not recount his observations of Reed's police car identification, as that would constitute improper bolstering of another witness's testimony.

In addition, the subsequent showup at the police station, at which the eyewitnesses collectively viewed the defendant after they had discussed the crime and its perpetrator, and when exigent circumstances no longer existed, was clearly improper *(see, e.g., People v Adams,* 53 NY2d 241; *People v Ford,* 100 AD2d 941; *People v Harris,* 74 AD2d 879). Accordingly, no testimony may be elicited regarding the witnesses' identification of the defendant at that time.

Nevertheless, because we find that these witnesses had an adequate opportunity to observe the burglar during the commission of the crime, there was an independent basis, untainted by the suggestive identification procedures, sufficient to insure the reliability of their in-court identifications of the defendant as the perpetrator *(cf., People v Adams, supra).* Bracken, J. P., Rubin and Harwood, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment of conviction, with the following memorandum: Subsequent to the close of the evidence and after both defense counsel and the prosecutor had presented their summations, the defendant interrupted the proceedings with the cryptic comment "[y]our Honor, I haven't had a chance to speak to the jury yet". The trial court immediately excused the jurors and inquired of defense counsel whether the defendant had been advised of proper trial procedures. In view of the court's *Sandoval* ruling *(see, People v Sandoval,* 34 NY2d 371), and the potential prejudice which could result from the exposure of the defendant's criminal history, the defendant and his counsel had apparently concluded that it would not be in the former's best interest for him to testify during the course of trial. Nevertheless, after hearing the convincing case adduced against him, the defendant came forward with an array of attempts to save himself from a conviction. These included requests to (1)

deliver a *pro se* summation, (2) summon additional defense witnesses, (3) present to the jurors a *pro se* brief, and (4) belatedly testify on his own behalf. Notwithstanding the defendant's claim that he had never knowingly agreed not to testify in his own behalf, I find his allegations regarding a violation of his constitutional rights to be totally devoid of merit. The defendant's blatant attempt to subvert the proper administration of justice by means of his specious allegations should not be judicially condoned.

The situations presented in *People v Harami* (93 AD2d 867) and *People v Hendricks* (114 AD2d 510), upon which the defendant relies, are patently distinguishable from the instant case. In *Harami* this court specifically found that the defendant's proffered testimony was relevant to ascertaining the defendant's intent at the time of the alleged attempted entry, a key issue at the trial. Under those circumstances, the trial court's failure to alter the order of proof was not susceptible to harmless error analysis. Moreover, the request therein was made after the requests to charge but before the summations. In the instant case, there was no hint of what the defendant's testimony might be. In view of the overwhelming evidence adduced against him, there is no reasonable likelihood that the defendant's belated testimony would have altered the verdict. The facts in *Hendricks* are even more easily distinguishable. There, the defendant had, on several occasions, expressed a desire to testify notwithstanding his counsel's strong exhortations to the contrary. Defense counsel therein admitted on the record that his client had at " 'some moments' " indicated a desire to testify but that it was his understanding that the defendant intended to abide by the advice given him *(People v Hendricks, supra,* at 512). There is no such evidence in the instant case. Another significant distinction is that in *Hendricks,* the defendant's request to take the stand occurred after defense counsel's summation but before the prosecutor's summation. Had the trial court granted the defendant's request in the case at bar, the defendant would have been afforded the advantage of interjecting additional testimony after having heard the prosecutor's summation in contravention of the ordered framework of CPL 260.30. Inasmuch as the defendant's rights were in no way impinged upon, the trial court did not err in denying the request to alter the order of proof.

Upon observing that the defendant exactly matched the eyewitnesses' description of the perpetrator in both general appearance and as to his clothing and the white bag which he

was carrying, and given his flight at the approach of the police and his attempt to abandon the white bag, the arresting officers had probable cause to believe that the defendant was the individual who had committed the burglary *(see, People v Mercado,* 117 AD2d 627, 629). There was no impropriety attendant upon the showup procedures conducted at the scene of apprehension and minutes later at the police station. Such procedures are justified, particularly when, as here, they are proximate in time and place to the scene of the crime, as a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly *(see, People v Hicks,* 68 NY2d 234). In any event, inasmuch as the bases for the witnesses' in-court identifications were their observations of the defendant during the incident, and not the allegedly tainted procedures, there were clearly independent sources for those identifications *(see, People v Lloyd,* 108 AD2d 873, *affd* 66 NY2d 964; *People v Lewis,* 123 AD2d 716, 719). In view of the independent sources for all of the in-court identifications and the fact that no testimony was adduced at the trial concerning the in-person identification at the felony hearing, the denial of the defendant's request to waive his presence at the felony hearing was, at worst, harmless error *(see, People v Lyde,* 104 AD2d 957; *cf., People v Cummings,* 109 AD2d 748, 749).

In the absence of any meritorious grounds for reversal, I vote to affirm the judgment of conviction.