[706 NYS2d 1]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RASHAWN MASON, Also Known as DARREL ISAAC, Appellant.

First Department, February 29, 2000

APPEARANCES OF COUNSEL

*Richard Nahas* of counsel (*Rona Feinberg* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

*Paul Wiener* of counsel, New York City (*M. Sue Wycoff,* attorney), for appellant.

## OPINION OF THE COURT

NARDELLI, J. P.

The issue raised in this appeal concerns whether a fundamental error of constitutional law concerning the defendant's right to testify, espoused by defense counsel and adopted by the trial court, which inexorably led to an arbitrary and confusing series of events, ultimately resulted in prejudice to defendant which cannot be deemed harmless and which is sufficient to warrant a new trial.

Defendant was charged, pursuant to New York County Indictment No. 10114/95, filed on October 25, 1995, with one count of criminal possession of a weapon in the second degree (Penal Law § 265.03) and two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [3], [4]). Defendant's trial commenced before a jury on December 11, 1996 and on December 18, 1996, the jury convicted defendant as charged. On April 1, 1997, defendant was sentenced, as a second violent felony offender, to concurrent terms of 10 years on the first count and seven years on the remaining counts.

At trial, New York City Police Officers Peter Stanisch and Roy Williams testified that at approximately 11:50 P.M. on October 11, 1995, they were on routine patrol in a marked police car on 146th Street near Amsterdam Avenue when they saw an unidentified woman running in the street toward their patrol car. The woman pointed toward defendant, who was pursuing her, and yelled "[h]e has a gun. He has a gun." Defendant, who was approximately 40 feet away from the patrol car, stopped, made a motion "like [he was] discarding [an] object," turned, and ran in the opposite direction.

The officers gave pursuit and, after losing sight of defendant for less than a minute, Officer Williams glanced in his rearview mirror and noticed defendant lying under a parked car. The officers handcuffed and frisked defendant and recovered an empty holster from defendant's back pocket. Officer Williams thereafter directed other officers to the general area where he had seen defendant discard an object and Officer Gilbert Rivera recovered a loaded semiautomatic handgun from under a parked car.

A ballistics expert, Detective Richard Sossa, testified that the gun recovered from the street was operable, that it contained five live rounds of ammunition, and that its serial number had been cut out. Detective Sossa also testified that the holster recovered from defendant had been manufactured for semiautomatic weapons.

At the close of the People's case, with the jury out of the courtroom, defendant informed the court that he wished to testify and that he had advised his attorney as to this, but that counsel had disagreed. The court noted that if defendant took the stand he could be cross-examined regarding statements made after his arrest, in which defendant "infer[ed] that [he was] guilty." The court also noted that he "commend[ed] counsel for her courage" in making a "very wise decision" not to allow defendant to testify. The court then directed the parties to proceed and defendant, not counsel, noted his objection for the record.

Shortly after the jury returned to the courtroom, the court directed counsel to approach the bench and stated: "This is a very delicate situation. He says he wants to testify. I mean, generally speaking he has a right to testify. You feel that you as his lawyer have advised him not to testify but isn't it ultimately his decision even though it might be over your objection?"

Defense counsel responded that she did a great deal of "soul searching" and had also conducted research and spoken to several Judges who advised her that "ultimately the defense is my responsibility." The prosecutor interjected his agreement and the court held that it was not the court's responsibility to order the defendant to testify. The court further held that: "[U]nder the circumstances since you think it's in his best interests given what we know maybe [sic] revealed upon his cross examination, that I will go with your judgment * * * I don't think that the rule that he must testify is entirely absolute and this case may be unique enough to amplify why it shouldn't be entirely absolute."

Defense counsel rested her case without calling defendant and then delivered her summation. Immediately after counsel concluded, defendant addressed the jury and stated: "That's not true. They wouldn't allow me to get on the stand and tell my side of the story. I have witnesses that I wanted you to hear. They don't want to allow me to get on the stand and tell you my side of the story. I was never chasing anybody. I was never under no car. They wouldn't allow me to tell you—they wouldn't allow me to tell you my side of the story."

Following defendant's outburst, the court inquired of defendant as to whether he still wanted to testify. After receiving an affirmative reply, a short recess was directed whereupon defense counsel stated, in the presence of the jury, that the court's decision to allow defendant to testify was over her objection.

Defendant subsequently testified that he and a friend were sitting on a car on 146th Street when police officers approached and searched them. After allowing his friend to leave, the officers showed defendant a gun and told him he had dropped it and that he was being arrested for gun possession. Defendant also denied telling one of the arresting officers that he "wasn't going to shoot her. You don't know what she did to me" and conceded that he had previously been convicted of two felonies and two misdemeanors, and had used aliases in the past.

Officer Stanisch, in rebuttal, testified that defendant told him that the woman he was chasing was named Gloria, that she was his wife, that she was a crack addict, that defendant had chased her because she had "pissed [him] off, and that he wasn't going to hurt her and only wanted to scare her." At the conclusion of the testimony, defense counsel, for the second time, and the prosecutor, delivered summations, following which defendant was convicted and sentenced as noted above.

One of the fundamental precepts of due process is that a defendant in a criminal proceeding has the right to testify, which right is guaranteed under both the Federal and New York State Constitutions (US Const 14th Amend; NY Const, art I, § 6; *People v Burke*, 176 AD2d 1000, 1001, *lv denied* 79 NY2d 825; *People v Harami*, 93 AD2d 867; *Spradling v Texas*, 455 US 971, 973).

It is also well established that a defendant, upon accepting the assistance of counsel, retains authority only over certain fundamental decisions regarding the case, such as "whether to plead guilty, waive a jury trial, testify in his or her own behalf or take an appeal" (*People v White*, 73 NY2d 468, 478, *cert*

*denied* 493 US 859; *see also, People v Colon,* 90 NY2d 824, 825; *People v Cassas,* 84 NY2d 718, 723; *Jones v Barnes,* 463 US 745, 751).

Thus, it is clear in this case that the court's rulings in which it endorsed the argument of defense counsel and held that counsel, and not defendant, was ultimately responsible for the decision as to whether defendant would testify in his own behalf, were in error. The People, however, now maintain that such error was harmless and was cured when the court ultimately permitted him to testify after his outburst, subsequent to his attorney's summation and over his counsel's objection. We disagree.

The error in this case was clearly of a constitutional nature and in order for such error to be deemed harmless, there must be no reasonable possibility that the error might have contributed to defendant's conviction and it must be found harmless beyond a reasonable doubt (*see, People v Crimmins,* 36 NY2d 230, 237; *People v Hoyle,* 211 AD2d 973, 974, *lv denied* 86 NY2d 736; *People v Khan,* 200 AD2d 129, 139, *lv denied* 84 NY2d 937).

Section 260.30 of the Criminal Procedure Law sets forth the order in which a jury trial is to proceed, but "the common-law power of the trial court to alter the order of proof 'in its discretion and in furtherance of justice' remains at least up to the time the case is submitted to the jury" (*People v Olsen,* 34 NY2d 349, 353; *see also, People v Washington,* 71 NY2d 916, 918; *People v Braxton,* 254 AD2d 365, *lv denied* 93 NY2d 850). In the absence of a compelling reason to do so, the order of trial prescribed by CPL 260.30 should be adhered to (*People v Fama,* 212 AD2d 542, 543, *lv denied* 86 NY2d 734; *People v Farrow,* 176 AD2d 130, 131, *lv denied* 79 NY2d 826).

In this matter, the court's failure to follow the statutorily delineated order of trial had its genesis solely in the court's own fundamental error with regard to defendant's basic due process right to testify, and we find the deviation from the prescribed order of trial failed to cure the court's error. We cannot, upon the record before us, deem the error in refusing to permit defendant to testify at the proper stage of the trial to be harmless beyond a reasonable doubt.

Moreover, the trial court's actions, which resulted in defendant testifying under haphazard and somewhat confusing conditions, resulted in enormous prejudice to defendant. In order to procure his right to testify, defendant told the jury, in part, "[t]hey wouldn't allow me to get on the stand and tell my

side of the story * * * They don't want to allow me to get on the stand and tell you my side of the story." It appears likely, after the foregoing outburst, that the jury may very well have concluded that neither the court, nor his own attorney, had faith in his story. This was compounded by defense counsel's statement that the court's acquiescence in defendant's request to take the stand was "over my objection." For these reasons alone, we direct a new trial.

It must also be pointed out that an "essential ingredient in our system of criminal jurisprudence, rooted deeply in our concept of a fair trial within the adversarial context" (*People v Felder*, 47 NY2d 287, 295) is the right to the assistance of counsel, which is guaranteed by both the Federal and New York State Constitutions (US Const 6th, 14th Amends; NY Const, art I, § 6). In *People v Claudio* (83 NY2d 76), the Court of Appeals opined that " '[t]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial' " (*supra,* at 80, quoting *United States v Cronic,* 466 US 648, 658).

There is, however, no set litmus test for determining what constitutes ineffective or inadequate legal representation (*People v Ellis*, 81 NY2d 854, 856; *People v Baldi*, 54 NY2d 137, 146), and the law, the evidence and the unique circumstances of each particular case must be viewed as a whole (*People v Benevento*, 91 NY2d 708; *People v Rivera*, 71 NY2d 705, 708; *People v Jackson*, 52 NY2d 1027). Further, it is "elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense" (*People v Droz*, 39 NY2d 457, 462).

Initially, defense counsel, by misstating the law and thereafter convincing the court that the decision of whether defendant was to testify was ultimately hers, set forth a chain of events which led to defendant's assertion of his own rights and, ultimately, to his prejudice. Defense counsel compounded her mistakes by, somewhat remarkably, objecting before the jury to defendant's request that he be allowed to testify, clearly indicating that she did not want him to take the stand.* This is not to say that defense counsel was not entirely correct in her recommendation that defendant not testify or that she was

---

* Perhaps defense counsel should have noted her recommendation that defendant not testify on the record outside of the hearing of the jury.

anything but zealous in her representation. It was, however, her basic misunderstanding of a constitutional right that directly led to defendant's prejudice.

Accordingly, the judgment of the Supreme Court, New York County (Michael Corriero, J.), rendered April 1, 1997, which convicted defendant, after a jury trial, of criminal possession of a weapon in the second degree and two counts of criminal possession of a weapon in the third degree, and sentenced him, as a second violent felony offender, to concurrent terms of 10 years on the first count, and to 7 years on the remaining counts, should be reversed, on the law, and the matter remanded to the Supreme Court for a new trial.

SAXE, J. (dissenting). Defendant was charged with criminal possession of a weapon in the second and third degrees. At trial, the People offered the testimony of two police officers, who testified that while on routine patrol on 146th Street near Amsterdam Avenue at 11:50 P.M. on October 11, 1995, an hysterical woman ran toward their squad car, pointed toward the defendant, who was running after her, and yelled "[h]e has a gun." When defendant saw the patrol car, he stopped, made a motion as if to discard an object, turned around and ran the other way. After chasing and then losing sight of the defendant, the officers found him hiding under a parked car. They then handcuffed and frisked him, recovering an empty holster from his back pocket. Other officers found a loaded revolver under a car in the area where the defendant was seen discarding the object. It was later determined that the revolver was operable. Although the officers searched the area, they could not locate the woman who had approached their patrol car.

At the close of the People's case, while the jury was out of the courtroom, defendant informed the court that he wished to testify and that he had advised his attorney of that fact. After determining that defense counsel had advised defendant not to testify, since the prosecutor would be able to cross-examine him about his prior statements, the court ruled that defendant would not be permitted to testify. Defendant's objection, made in his own voice and not through counsel, was noted for the record.

A short time later, the court raised the subject with counsel again. Defense counsel asserted her belief that "ultimately the defense is my responsibility." The prosecutor agreed and the court instructed defense counsel to proceed with her summation. When she finished, the defendant stated, in front of the

jury: "That's not true. They wouldn't allow me to get on the stand and tell my side of the story. I have witnesses that I wanted you to hear. They don't want to allow me to get on the stand and tell you my side of the story. I was never chasing anybody. I was never under no car. They wouldn't allow me to tell you * * * they wouldn't allow me to tell you my side of the story."

The court responded that it would allow defendant to testify, and ordered a recess. Defense counsel objected in front of the jury.

Defendant then testified that on the night of his arrest, he and a friend were sitting on top of a car on 146th Street when police officers approached and searched them. Although the officers allowed his friend to leave, they handcuffed defendant after telling him that he fit the description of someone they were looking for. The officers then showed him a gun and told him that he had dropped it. When he asked the officers at the precinct why he was being arrested and they told him for gun possession, he informed them that he could not have been chasing his wife because he was not married. He denied making any statement to one of the arresting officers that he "wasn't going to shoot her. You don't know what she did to me." The defendant conceded that he had previously been convicted of two felonies and two misdemeanors and that he had used aliases in the past.

On rebuttal, the People introduced testimony by one of the arresting officers that after he advised defendant at the precinct of the crimes with which he was being charged, he asked him why he had chased the woman with a gun. Defendant replied that the woman's name was Gloria Mason, that she was his wife, that she was a crack addict and that he had chased her because she had "pissed [him] off." After being asked about the gun, defendant also told the officer that "I wasn't going to hurt her, just going to scare her."

Defense counsel then delivered a second summation, substantially similar to her first, except to the extent she noted that defendant's testimony explained why he would have run from the police.

The jury convicted defendant of the charged crimes.

Admittedly, the initial ruling of the trial court, precluding defendant from testifying at trial, based upon counsel's advice, was erroneous (*Jones v Barnes*, 463 US 745, 751), and would have constituted an error of constitutional dimension if left

uncorrected (*see, People v Hendricks*, 114 AD2d 510, 513; *People v Harami*, 93 AD2d 867, 867-868). However, defendant was ultimately permitted to testify. As a result, in the final analysis, the error did not deprive defendant of any fundamental constitutional right.

"Errors are almost inevitable in any trial, improprieties almost unavoidable, but the presence of one or the other furnishes no automatic signal for reversal and retrial" (*People v Kingston*, 8 NY2d 384, 387). Trials are not perfect; Judges make mistakes, and so do lawyers. The normal mechanism for dealing with error is to attempt to cure it.

Most errors can be corrected by curative instruction or by subsequent remedial ruling at trial. Certain types of errors may not be curable, such as a reference to or introduction of prejudicial information precluded by an *in limine* ruling (*see, e.g., People v Griffin*, 242 AD2d 70, *appeal dismissed* 93 NY2d 955; *People v Cavallerio*, 71 AD2d 338). Other errors, such as a preclusion of relevant and material evidence, although not curable by a mere instruction from the court (*see, People v Bahr*, 74 App Div 117), may be cured by subsequently reconsidering the issue and permitting the introduction of the previously precluded evidence, or by subsequent developments in the trial (*see, People v Storey*, 215 App Div 446, *affd* 243 NY 626). Similarly, a defendant's absence from a *Sandoval* hearing was held to be cured by the subsequent reading of the minutes of the hearing in his presence, after which defendant was given an opportunity to consult with counsel and raise any objections (*see, People v Lamour*, 189 AD2d 825, *lv denied* 81 NY2d 973). Such a cure was effectuated here.

Nor did the rather late point at which defendant's testimony was permitted to proceed result in a violation of the order of trial provision of CPL 260.30. In *People v Harami* (*supra*), where the defendant's conviction was reversed because he was not permitted to testify, the defendant made his request to testify after the defense rested (without presenting witnesses), prior to summations. Noting that the order of trial prescribed by CPL 260.30 is not rigid, and that " 'the common-law power of the trial court to alter the order of proof "in its discretion and in furtherance of justice" remains at least up to the time the case is submitted to the jury,' " the court concluded that denial of the defendant's request to testify constituted an abuse of discretion (93 AD2d, *supra,* at 867 [citation omitted]). That holding was extended in *People v Hendricks* (*supra*), where the defendant's request to testify was made *after* defense counsel's

summation. Even at that late point in the proceedings, the court held that the trial court should have exercised its discretion to permit the defendant to testify (see, 114 AD2d, supra, at 513).

Thus, although it has been held that the order of the trial prescribed by the statute must be followed absent a showing of a compelling reason for a variation (see, People v Fujah, 182 AD2d 774), it follows from People v Hendricks (supra) that defendant's testimony here, offered after defense counsel's summation, was not a per se violation of CPL 260.30. In any event, compelling reasons to vary the order of trial were presented by the need to correct the earlier constitutional error and to give the People the opportunity to cross-examine the defendant as to the content of his unsworn blurted assertions of fact.

Because error was certainly committed, and attempts to cure may leave some lingering prejudice behind, we turn to consideration of defendant's claim that he suffered prejudice which deprived him of a fair trial.

Defendant contends that he was irrevocably prejudiced by (1) his own attorney's objection, on the record, in front of the jury, to his testifying;

(2) his attorney's failure, in the summation delivered after his testimony, to incorporate his testimony in her presentation; (3) the haphazard, confused conditions under which he testified, which might have caused the jury to reject the value of his testimony, particularly since it appeared that defense counsel and the court itself had rejected his testimony.

It is important to keep in mind that by the time the jury was instructed on the law and retired to begin its deliberations, no relevant evidence had been kept from its consideration, nor had any improper evidence been introduced. The jury had been instructed that their verdict must be based solely on the evidence, and not on what counsel or the Judge said. The court also explained that the jury was not to make any findings based upon objections interposed. We must presume that the jury heard, understood and followed this instruction, and made its findings based upon the evidence alone (see, People v Davis, 58 NY2d 1102). Thus, we must conclude that little or no prejudice ensued from the initially erroneous ruling.

Moreover, any lingering effect of the initial error can only be viewed as harmless, when we keep in mind the overwhelming nature of the People's evidence, in contrast with the patently self-serving testimony of defendant; there is virtually no pos-

sibility "that the jury would have acquitted the defendant had it not been for the error or errors which occurred" (*People v Crimmins*, 36 NY2d 230, 242).

I also reject defendant's contention that he was deprived of the effective assistance of counsel by his attorney's erroneous belief that she was entitled to decide whether or not to have him testify. In all other respects, counsel provided him with representation that was more than competent. This single mistake, although potentially damaging, in fact had little ultimate effect on the outcome. Based on the existing record, viewed in totality as of the time of representation, counsel provided meaningful representation (*People v Baldi*, 54 NY2d 137). Counsel's failure to honor defendant's insistence on testifying did not prevent defendant from receiving a fair trial since he was ultimately permitted to testify and since counsel provided zealous representation in all other respects (*see, People v Benevento*, 91 NY2d 708, 713-714; *People v Hobot*, 84 NY2d 1021, 1024).

ELLERIN and BUCKLEY, JJ., concur with NARDELLI, J. P.; SAXE, J., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered April 1, 1997, reversed, on the law, and the matter remanded to the Supreme Court for a new trial.